# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NMT MEDICAL, INC.

               Plaintiff,

v.

AGA MEDICAL CORPORATION,

               Defendant.

Civil Action No. 04-12565-NG

**ORAL ARGUMENT REQUESTED**

## NMT MEDICAL, INC.'S MEMORANDUM IN OPPOSITION TO AGA MEDICAL CORPORATION'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

William F. Lee  (BBO #291960)
Cynthia D. Vreeland  (BBO #635143)
David L. Cavanaugh  (BBO #566162)
Daniel M. Esrick  (BBO #647676)
Kate Saxton  (BBO #655903)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel.:  (617) 526-6000
Fax:   (617) 526-5000

*Attorneys for Plaintiff Nitinol Medical Technologies, Inc. d/b/a NMT Medical, Inc.*

Dated:   March 28, 2005

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   FACTS .....................................................................................................................1

   A.   The Original Massachusetts Litigation................................................................1

   B.   The Present Litigation And Minnesota Litigation..................................................3

   C.   The Location Of Relevant Witnesses And Evidence ............................................5

         1.   NMT ..............................................................................................................5

         2.   AGA...............................................................................................................6

         3.   Lloyd A. Marks..............................................................................................6

         4.   The Prosecuting Attorneys ............................................................................7

III.  ARGUMENT...............................................................................................................7

   A.   Introduction........................................................................................................7

   B.   Judicial Efficiency Weighs Strongly In Favor Of Continuing The
         Litigation In Massachusetts. ...............................................................................8

   C.   AGA's Reliance On The "First-Filed" Principle Is Misplaced. ...........................9

         1.   AGA's Declaratory Action Was Not The "First Filed" Case. ....................9

         2.   The "Special Circumstances" Of This Case Weigh Strongly In
               Favor Of Continuing The Litigation In Massachusetts. .........................10

         3.   "Convenience" Factors Weigh In Favor of Continuing The
               Litigation In Massachusetts. ...................................................................13

         a.   NMT's Choice Of Forum Is Entitled To Deference. ....................................14

         b.   Massachusetts Is Not Inconvenient For AGA And Is More
               Convenient For NMT....................................................................................14

         c.   Massachusetts Is Also More Convenient For The Witnesses. .......................15

         d.   Massachusetts And The East Coast Offer Greater Access Than
               Minnesota To Sources Of Proof. ................................................................16

IV.   CONCLUSION..........................................................................................................18

V.    REQUEST FOR ORAL ARGUMENT ...........................................................................18

US1DOCS 5020472v3

## <u>TABLE OF AUTHORITIES</u>

Federal Cases

*Brant Point Corp. v. Poetzsch*,
    671 F. Supp. 2 (D. Mass. 1987) ...............................................................................15

*Champion Exposition Services, Inc. v. Hi-Tech Electric, LLC*,
    273 F. Supp.2d 172 (D. Mass. 2003);.................................................................7, 14

*Cianbro Corp. v. Curran-Lavoie, Inc.*,
    814 F.2d 7 (1st Cir. 1987)........................................................................................11

*Davox Corp. v. Digital Sys. Intl., Inc.*,
    846 F. Supp. 144 (D. Mass. 1993) ...........................................................................12

*DuPont Pharm. Co. v. Sonus Pharm., Inc.*,
    122 F. Supp.2d 230, 231 (D. Mass 2000).............................................................11, 12

*Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l., Inc.*,
    56 F. Supp.2d 134 (D. Mass. 1999) .........................................................................14

*Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*,
    249 F. Supp.2d 12 (D. Mass. 2002) ....................................................................13, 14

*Hyundai Space & Aircraft Co., Ltd. v. Boeing Co.*,
    No. C-99-3255 S1, 1999 WL 910131, at *5 (N.D. Ca. Oct. 12, 1999) .....................17

*Kleinerman v. Luxtron Corp., et al.*,
    107 F. Supp.2d 122 (D. Mass. 2000) ...............................................................passim

*Neverson v. Bissonnette*,
    261 F.3d 120 (1st Cir. 2001).....................................................................................10

*Northwest Airlines, Inc. v. American Airlines, Inc.*,
    989 F.2d 1002 (8th Cir. 1993) ..................................................................................12

*Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*,
    930 F. Supp. 1317 n.9 (D. Minn. 1996).....................................................................10

*Nowak v. Tak How Investments, Ltd.*,
    94 F.3d 708 (1st Cir. 1996).........................................................................................7

*Princess House, Inc. v. Lindsey*, 136 F.R.D. 16 (D. Mass. 1991) .......................7, 15, 16

*Red Wing Shoe Co. v. B-Jays USA, Inc.*,
    No. Civ. 02-257DWFAJB, 2002 WL 1398538, at *2 (D. Minn. 2002)....................10

US1DOCS 5020472v3

*Reebok Int'l. Ltd. v. Dunkadelic, Inc.*,
    2004 WL 413266, at *3 (D. Mass. 2004) ...............................................................................11

*Slidell v. Archer Daniels Midland Co.*,
    No. Civ. 02-4841, 2003 WL 22050776, at *5 (D. Minn. 2003) .................................................10

*Smart v. Sunshine Potato Flakes, L.L.C.*,
    307 F.3d 684 (8th Cir. 2002) ......................................................................................................9

*U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*,
    920 F. Supp. 2d 487 (8th Cir. 1990) .......................................................................................9

*Veryfine Products, Inc. v. Phlo Corp.*,
    124 F. Supp.2d 16 (D. Mass. 2000) ...............................................................................9, 10, 11

*Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*,
    246 F. Supp.2d 102 (D. Mass. 2003) ........................................................................................17

Statute

35 U.S.C. § 302............................................................................................................................3

US1DOCS 5020472v3

## I.    <u>INTRODUCTION</u>

AGA Medical Corporation ("AGA") seeks to dismiss this action altogether, or transfer it to Minnesota, even though it is a continuation of *Massachusetts* litigation that was pending between AGA and Nitinol Medical Technologies, Inc. ("NMT") *in this Court* for five years.  In 1998, NMT filed a patent infringement action against AGA involving the same patent, the same claims, two of the same parties, and the same products now at issue in this case.  The case continued for five years, during which time the parties engaged in substantial discovery and your Honor considered various motions, including two motions for summary judgment.  The litigation was stayed and ultimately dismissed *without prejudice* during the pendency of a related re-examination proceeding before the U.S. Patent and Trademark Office (the "Patent Office").  In late 2004, after the Patent Office confirmed the validity of the patent at issue in this case, AGA filed a preemptive declaratory judgment action in Minnesota, while NMT revived its litigation in this Court.  Both complaints were served on the same day.

AGA bases its motion on the argument that its preemptive Minnesota action was "first-filed."  However, the "first-filed" rule has no application here.  The original Massachusetts litigation – not the Minnesota action – was the first to be filed.  Moreover, the circumstances of the case weigh strongly against transfer to Minnesota.  This Court already has overseen the litigation for five years and can most efficiently resolve the remaining issues in the case.  Accordingly, the Court should reject AGA's transparent attempt to usurp NMT's choice of forum.

## II.    <u>FACTS</u>

### A.    <u>The Original Massachusetts Litigation</u>

On December 10, 1998, NMT commenced litigation against AGA in this Court, C.A. No. 98-12506-NG, for infringement of U.S. Patent No. 5,108,420, entitled "Aperture Occlusion

Device (the "'420 patent").  (Saxton Decl., Ex. A)[1]  NMT owns an exclusive license to the '420 patent.  In that litigation, NMT alleged that AGA's Amplatzer® medical devices infringed one or more claims of the '420 patent.  (*Id.*, Ex. A)  Like the present action, that case was assigned to your Honor.

In its answer and counterclaims, filed on April 12, 1999, AGA sought a declaratory judgment that the claims of the '420 patent were invalid, unenforceable, void in law, and not infringed by AGA.  (Saxton Decl., Ex. B)  AGA's counterclaims were substantively identical to the claims that now form the basis of the declaratory judgment action brought by AGA against NMT in the District of Minnesota, C.A. No. 04-cv-4486-JMR-FLN.  (Saxton Decl., Ex. C)

The original Massachusetts case remained pending before this Court for five years.  During that time, the parties engaged in substantial discovery, including initial disclosures, document requests, interrogatories, claim charts comparing claims of the '420 patent to the accused Amplatzer® products, and production of more than 25,000 pages of documents.  The Court also considered two motions for summary judgment.  (Saxton Decl., Ex. D; Davis Decl., ¶ 12)[2]

AGA's first motion for summary judgment – asserting that the '420 patent was not infringed and was invalid – was denied by this Court.  AGA subsequently filed a "renewed" motion for summary judgment asserting that the '420 patent was invalid based on additional prior art that had not been considered during prosecution of the patent – namely, a German patent publication (DD 233303) and a United States patent (U.S. Patent No. 5,192,301 to Kamiya, et al.).  (Saxton Decl., Ex. D; Davis Decl., ¶ 13)

---

[1]    The Declaration of Kate Saxton, with exhibits, ("Saxton Decl.") is filed together with this Memorandum.

[2]    The Declaration of Richard E. Davis ("Davis Decl.") is filed together with this Memorandum.

Soon thereafter, NMT voluntarily sought to stay the proceedings so that it could request a "re-examination" of the patent by the Patent Office. (Davis Decl., ¶ 14). The patent statutes expressly authorize such re-examination proceedings when an inventor learns of new prior art after a patent is issued. *See* 35 U.S.C. § 302. On April 25, 2001, this Court stayed the case. (Saxton Decl., Ex. E) On June 25, 2001, Dr. Lloyd A. Marks, the named inventor of the '420 patent, voluntarily submitted the '420 patent to the Patent Office for re-examination in light of the new prior art. (Saxton Decl., Ex. F; Davis Decl., ¶ 14)

As the Court may recall, periodic status conferences were held over the following sixteen months. After each conference, the Court continued its order staying the proceedings. At a status conference on October 31, 2002, the Court indicated that it would consider dismissing the case *without prejudice* if the Patent Office did not issue a decision on the re-examination proceeding by the end of 2002. (Saxton Decl., Ex. D)

On February 5, 2003, the Patent Office examiner conducting the re-examination rejected all of the claims of the '420 patent. (Saxton Decl., Ex. G) NMT sought timely review of the Patent Office examiner's determination before the Board of Patent Appeals and Interferences (the "Board"). (Saxton Decl., Ex. H)

On September 30, 2003, AGA asked this Court to convert the stay of the parties' original Massachusetts litigation into a dismissal without prejudice. On December 1, 2003, while the Patent Office appeal was pending, this Court dismissed the parties' original litigation *without prejudice* to NMT's right to re-file the case in Massachusetts pending the outcome of the Patent Office re-examination proceedings. (Saxton Decl., Ex. I)

**B.    The Present Litigation And Minnesota Litigation**

On August 19, 2004, the Board reversed the Patent Office examiner's initial determination and found that the two pieces of prior art identified in AGA's "renewed" motion

for summary judgment did not invalidate the claims of the '420 patent. The Board remanded the '420 patent to the examiner for further proceedings consistent with the Board's decision. (Saxton Decl., Ex. J)

On September 7, 2004, NMT issued a press release announcing the Board's favorable decision. Among other things, the press release stated that the Board's decision "represents an important step in our patent infringement efforts against AGA. As a medical technology innovator, NMT Medical has obtained the rights to a impressive portfolio of patents and intellectual property that we will continue to defend aggressively." (Saxton Decl., Ex. K)

As the press release confirms, NMT always intended to revive its infringement litigation against AGA in this Court upon receipt of a favorable ruling from the Patent Office. However, rather than file that complaint immediately upon receiving the Board's decision, NMT initially intended to wait for receipt of a formal Re-examination Certificate from the Patent Office certifying that all claims of the '420 patent had been allowed on appeal. (Davis Decl., ¶ 18)

On October 13, 2004, before the Patent Office formally certified that the claims of the '420 patent had been allowed on appeal, AGA brought an action in Minnesota seeking a declaratory judgment of non-infringement and invalidity with respect to the '420 patent. AGA's Minnesota declaratory judgment complaint consists of the same counterclaims and defenses that AGA asserted in both the original and the present litigations in this Court. (Saxton Decl., Ex. C)

On December 7, 2004, NMT revived its complaint in this Court by filing the instant action against AGA, seeking damages for infringement of the '420 patent. NMT's complaint – which is substantively identical to the complaint it previously filed in this Court – was again assigned to your Honor. (Saxton Decl., Ex. M)

AGA did not serve NMT with its Minnesota complaint until January 20, 2005.  NMT served AGA with its complaint in this case the same day.  (Saxton Decl., Exs. N, O)[3]

On January 26, 2005, Patent Office examiner Michael Thaler issued a communication confirming the patentability of all claims of the '420 patent and indicating that a final certificate would be forthcoming.  The Patent Office action confirms that all eleven original claims in the '420 patent, as well as additional claims, were allowed on appeal.  (Saxton Decl., Ex. L)  When the final Patent Office certificate issues, the '420 patent will retain its original patent number, 5,108,420, with an additional identifier indicating that the patent went through the reexamination process.

On March 9, 2005 – the same day that AGA filed the present motion – NMT sought to transfer AGA's Minnesota complaint to this Court.  The Minnesota Court will hear arguments on NMT's motion in May.

**C.      The Location Of Relevant Witnesses And Evidence**

The majority of witnesses and documents relevant to this litigation are located in Massachusetts, or in close proximity to Massachusetts on the East Coast.  AGA's own conduct during the original litigation confirms that Massachusetts is a convenient location for this case.  Never during the lengthy duration of that case did AGA indicate that Massachusetts was an inconvenient forum, nor did AGA seek to transfer that case to Minnesota.  (Davis Decl., ¶ 16)

**1.      NMT**

NMT is a Massachusetts corporation with its principal (and sole) place of business located at 27 Wormwood Street, Boston, Massachusetts.  (Davis Decl., ¶ 3)

---

[3]      NMT did not immediately serve AGA with its complaint because it continued to wait for a formal Re-Examination Certificate from the Patent Office.  (Davis Decl., ¶ 18)

NMT's officers, directors, and relevant employees are located in Massachusetts, including the following individuals, many of whom were identified in NMT *and* AGA's initial disclosures in the original Massachusetts litigation: John E. Ahern (Chairman, President, and Chief Executive Officer); Richard E. Davis (Vice President and Chief Financial Officer); Rudy Davis (Clinical Affairs Project Director); Carol Ryan Devellian (Vice President, Research and Development); John Wright, Jr. (Program Director); and Jim Scutti (Senior Technical Consultant). (Davis Decl., ¶ 4; Saxton Decl., Exs. P, Q)

NMT conducts all of its research, design, testing, development, and manufacturing out of its Massachusetts headquarters. (Davis Decl., ¶ 5). NMT's files and records are located in or near Massachusetts. (Davis Decl., ¶ 5)

### 2.    AGA

AGA is a Minnesota corporation with its principal place of business at 682 Mendelssohn Avenue, Golden Valley, Minnesota. AGA has trained at least fourteen Massachusetts physicians in the clinical use of some or all of the Amplatzer® products that are the subject of the present actions and the original litigation in this Court. Thirteen of those doctors are located in Boston, Massachusetts. (Saxton Decl., Exs. C, R)

### 3.    Lloyd A. Marks

Dr. Lloyd A. Marks, the sole inventor named on the '420 patent, resides at 1021 Minisink Way, Westfield, New Jersey. (Davis Decl., ¶ 6) The records of the invention of the '420 patent are located on the East Coast of the United States, in New Jersey, Pennsylvania and Boston, Massachusetts. (Davis Decl., ¶¶ 6,9)

US1DOCS 5020472v3

4.    **The Prosecuting Attorneys**

Attorneys at the law firm of Ratner and Prestia, in Valley Forge, Pennsylvania, prosecuted the '420 patent before the Patent Office.  (Davis Decl., ¶ 8)  The prosecution records of the '420 patent are located in Pennsylvania and Boston, Massachusetts.  (Davis Decl., ¶ 9)

Attorney George Myers prosecuted the re-examination of the '420 patent before the Patent Office, and was also responsible for the appeal to the Board.  (Davis Decl., ¶ 10) Mr. Myers presently resides in Massachusetts, near Boston.  (Davis Decl., ¶ 10)

## III.    ARGUMENT

### A.    Introduction

As this Court repeatedly has recognized, the plaintiff's choice of forum should "only rarely" be disturbed.  *Champion Exposition Services, Inc. v. Hi-Tech Electric, LLC*, 273 F. Supp.2d 172, 180 (D. Mass. 2003); *see also Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991).  "[T]he defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum."  *Champion*, 273 F. Supp.2d at 180 (*quoting Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996)).

AGA has not – and indeed cannot – meet this burden.  Considerations of convenience and judicial efficiency weigh strongly in favor of maintaining the litigation in Massachusetts.  Most significantly, because this case is a continuation of identical litigation that was pending in this Court for five years, the remaining issues between the parties can and should be resolved in this Court.  Transfer to Minnesota would be highly inefficient and would require a second court to learn the relevant facts and issues.  Likewise, because the majority of parties, likely witnesses, and sources of proof are located in or near Massachusetts, Massachusetts is also a more convenient forum.

**B.**    **Judicial Efficiency Weighs Strongly In Favor Of Continuing The Litigation In Massachusetts.**

AGA's motion virtually ignores the strong equitable and efficiency factors in favor of continuing this litigation in Massachusetts.  The original litigation before this Court was not only *related* to the current litigation, but in fact was *substantively identical*.  Both cases involve the same patent, the same claims, two of the same parties, the same products, and the same documentary evidence.

During the pendency of the original Massachusetts litigation, this Court presided over substantial discovery between the parties, including initial disclosures, document requests, interrogatories, claim charts comparing claims of the '420 patent to the accused Amplatzer® products, and production of more than 25,000 pages of documents.  (Saxton Decl., Ex. D; Davis Decl., ¶12)  This Court also considered two motions for summary judgment – denying the first motion, and staying the case so that the prior art raised in the second motion could be considered by the Patent Office.  (Saxton Decl., Ex. D)

AGA's motion is nothing more than an obvious attempt to secure a more favorable forum for the renewed litigation now that the Patent Office has confirmed the validity of the '420 patent.  AGA claims that this case is "very different" from the original litigation in this Court.  (*See* AGA's Br. at 5.)  However, this argument has no basis in fact.  While certain *additional* claims were added to the '420 patent during the re-examination process, those proceedings *affirmed the patentability of the original eleven claims* of the '420 patent.  (Saxton Decl., Ex. J)  Therefore, the form of those claims is now *identical* to their form during the original litigation in this Court.  Moreover, contrary to AGA's assertion, the '420 patent will emerge from reexamination with the same patent number, 5,108,420, with an additional identifier indicating that the patent went through the reexamination process.

US1DOCS 5020472v3

In short, there are no substantive differences between the original litigation in Massachusetts and the current litigation. The remaining issues can and should be resolved by this Court.

**C.    AGA's Reliance On The "First-Filed" Principle Is Misplaced.**

AGA bases its motion to dismiss or transfer on the argument that its Minnesota declaratory action was "first-filed." Although this Court has in appropriate circumstances given deference to "first-filed" actions, the "first-filed" rule has no application here.[4] NMT's original Massachusetts action – not AGA's action – was the first case to be filed between the parties. Moreover, even if this Court were to consider the Minnesota litigation to be the "first-filed" action, the circumstances of this case weigh strongly against transfer to Minnesota. As this Court has recognized in evaluating forum disputes, "the first-filed suit is particularly suspect" where, as here, it is a declaratory action for non-infringement. *Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp.2d 16, 22 (D. Mass. 2000).

**1.    AGA's Declaratory Action Was Not The "First Filed" Case.**

AGA claims that its Minnesota declaratory judgment action was the first-filed case. (AGA Br. at 7) This argument ignores two critical facts.

First, AGA ignores that substantively identical litigation between the parties was pending in Massachusetts for five years, from 1998 through 2003. This litigation was never resolved. Instead, it was stayed and ultimately dismissed *without prejudice* during the re-examination proceedings before the Patent Office. NMT promptly revived the action after the re-examination proceedings were concluded.

---

[4]    Indeed, the Eighth Circuit has held that the first-filed "rule" is "not a 'rule'" at all. *See Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002) ("'[F]irst filed' is not a 'rule.' It is a factor that typically determines, 'in the absence of compelling circumstances,' which of two concurrent federal court actions should proceed to judgment." (*quoting U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F. 2d 487, 488 (8th Cir. 1990)).

-9-

AGA claims that the original Massachusetts litigation "does not count" for purposes of determining which complaint was "first-filed." (AGA Br. at 7) The case it cites, however, *Neverson v. Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2001), offers little support for this position. *Neverson* holds only that – for purposes of evaluating a *statute of limitations* issue – a subsequent habeas corpus petition cannot "relate back" to an earlier petition that was dismissed without prejudice. This holding has no application to the forum dispute presented by this case.

AGA's argument also ignores that – although it literally "filed" its declaratory action papers at the Minnesota courthouse before NMT revived this action – both cases were *served* on the same day. While this Court does not appear to have addressed the issue, several Minnesota courts have held that, in evaluating which of two cases is "first-filed," the date of *service* is determinative. *See e.g., Red Wing Shoe Co. v. B-Jays USA, Inc.*, No. Civ. 02-257DWFAJB, 2002 WL 1398538, at *2 (D. Minn. 2002) (service date determines priority for first-to-file rule); *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 930 F. Supp. 1317, 1327 n.9 (D. Minn. 1996) (party who serves first is afforded priority under the first-filed rule).[5] Therefore, AGA's action is not likely to be considered "first-filed" in Minnesota, and should not be considered "first-filed" here.

2. **The "Special Circumstances" Of This Case Weigh Strongly In Favor Of Continuing The Litigation In Massachusetts.**

Even if the Court were to consider AGA's declaratory action to be the "first-filed" case, the preference generally accorded first filed actions can be overcome when there are "special circumstances" favoring the second-filed case, or when convenience favors the later-filed action. *See Veryfine Products, Inc.*, 124 F. Supp.2d at 22-25 (identifying exceptions to the rule).

---

[5]    At least one court in Minnesota has also held that the filing date may be determinative. *See Slidell v. Archer Daniels Midland Co*., No. Civ. 02-4841, 2003 WL 22050776, at *5 (D. Minn. 2003) (filing date controls).

The circumstances of this case overwhelmingly support maintaining the litigation in Massachusetts.  First, as described in detail above, this Court already has presided for five years over *identical* litigation between the parties, involving *identical* claims, defenses, accused products, and documentary evidence.  Judicial efficiency can, therefore, best be promoted by resolving the remaining issues in the case in this Court.  *See DuPont Pharm. Co.*, 122 F. Supp.2d at 231 (judicial and litigant economy strong factor in declining to follow the first-to-file rule.).

Second, and equally significant, AGA's declaratory action was an obvious attempt to deprive NMT of its chosen forum.  As this Court recognized in *Veryfine,* "special circumstances" justifying deference to a second-filed action "are usually found in situations in which one party has won a race to the courthouse by jumping the gun and filing a declaratory judgment action in a forum that has little relation to the dispute."  *See also Kleinerman v. Luxtron Corp., et al.*, 107 F. Supp.2d 122, 125-26 (D. Mass. 2000) (*quoting Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)) ("One such circumstance [warranting deference to the later-filed action] is if the first-filed action was the result of a race to the courthouse."); *Reebok Int'l. Ltd. v. Dunkadelic, Inc.*, 2004 WL 413266, at *3 (D. Mass. 2004) (one party "sprinting to the courthouse" in reaction to the other party's "imminent filing" may constitute a special circumstance).

In the patent context, a first-filed suit is "particularly suspect where a party has brought a declaratory judgment action for non-infringement."  *Veryfine Products, Inc.*, 124 F. Supp.2d at 22.  As the Court explained in *Veryfine*:

> The true underlying claim, of course, was patent infringement, and in cases such as this the circumstances demonstrate that the winner of the race to the courthouse should not enjoy the presumption of preferable venue.

*Id.* (refusing to transfer later-filed infringement action where first-filed case was a declaratory action); *see also DuPont Pharm. Co. v. Sonus Pharm., Inc.*, 122 F. Supp.2d 230, 231 (D. Mass 2000) (declining jurisdiction of first-filed declaratory action in favor of later-filed infringement action); *Kleinerman*, 107 F. Supp.2d at 124-25 (where alleged infringer files a declaratory action upon realizing that "litigation was inevitable," second-filed infringement action is entitled to deference); *Davox Corp. v. Digital Sys. Intl., Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (finding that "equities . . . dictate a transfer" of first-filed declaratory action in favor of later-filed infringement action).

AGA acknowledges that the first-to-file principle may be disregarded where one party "races to the courthouse by filing a declaratory judgment action." (AGA Br. at 8)  AGA also concedes (in its factual statement) that it "brought the Minnesota action *in response to new threats made by NMT*" in its September 7, 2004 press release (AGA Br. at 5 (emphasis added),[6] and because it "fear[ed]" that NMT would once again assert its patent." (AGA Br. at 6) However, despite that admitted factual backdrop, AGA then claims both that its filing did not represent a "race to the courthouse" and that NMT's decision to wait before filing its own lawsuit "suggests that NMT *had not contemplated bringing an imminent lawsuit*." (AGA Br. at 8 (emphasis added))[7]

---

[6]    In that press release announcing that the Board had reversed the Examiner's initial decision, NMT stated that the Board's favorable decision "represents an *important step in our patent infringement efforts against AGA*. As a medical technology innovator, NMT Medical has obtained the rights to an impressive portfolio of patents and intellectual property that we will *continue to defend aggressively*." (Saxton Decl., Ex. K (emphasis added))

[7]    AGA's reliance on *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002 (8th Cir. 1993) is misplaced. In that case, the 8th Circuit declined to apply an exception to the first-to-file rule. In so holding, the court observed that a six-week delay between a first-filed declaratory judgment action and a later-filed complaint "might" cause one to "infer" that the second-filed action was not truly contemplated until the first action was filed. *Id.* at 1007. Here, however, there is ample evidence not only that NMT *always intended to revive its litigation in this Court* as soon as it received a favorable ruling from the Patent Office, but also that AGA *was aware* of that intention. Moreover, there was an obvious reason for the delay – NMT was waiting for receipt of a formal Re-Examination Certificate.

-12-

Notwithstanding AGA's dubious contentions, it is difficult to conclude anything other than that AGA filed its preemptive Minnesota action because it knew that NMT would soon revive its own litigation in this Court following successful termination of the re-examination proceedings. Indeed, the only reason that the original Massachusetts litigation was first stayed – and later dismissed *without prejudice* – was to enable the Patent Office to reach a final ruling on validity matters that would have a direct impact on the proceedings in this Court. AGA should have known of NMT's intention to revive its litigation in Massachusetts on April 25, 2001, when this Court granted NMT's voluntary motion to stay pending reexamination; on December 2, 2003, when the original Massachusetts litigation was dismissed *without prejudice* to NMT's right to refile the case pending the outcome of the reexamination proceedings; and on August 19, 2004, when the Board reversed the examiner's initial determination. (Saxton Decl., Exs. E, I) AGA certainly knew of NMT's intention to revive its litigation in this Court by September 7, 2004, when it read NMT's press release describing the Patent Board decision as "*an important step in our patent infringement efforts against AGA.*" (Saxton Decl., Ex. K (emphasis added)) AGA's declaratory action in Minnesota was filed in response to NMT's imminent litigation, was an obvious attempt to deprive NMT of its chosen forum, and is entitled to no deference. S*ee Kleinerman*, 107 F. Supp.2d at 124-25.

3.   **"Convenience" Factors Weigh In Favor of Continuing The Litigation In Massachusetts.**

The relevant convenience factors, including (1) the plaintiffs choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; and (4) the location of sources of proof, also weigh against transferring the case to Minnesota. *See, e.g., Kleinerman*, 107 F. Supp.2d at 125 (setting forth convenience factors and declining to follow the rule); *Holmes*

*Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp.2d 12, 17 (D. Mass. 2002)

(same).

### a.    NMT's Choice Of Forum Is Entitled To Deference.

This District gives substantial deference to the plaintiff's choice of forum.  Retaining this

case in Massachusetts is accordingly proper because NMT – the plaintiff in this case – chose

Massachusetts.  *See, e.g., Kleinerman*, 107 F. Supp.2d at 125 (presumption in favor of plaintiff's

chosen forum is "particularly strong" where it is plaintiff's home forum); *Champion*, 273

F. Supp. at 180 (plaintiff's choice of forum "only rarely" disturbed); *Fairview Mach. & Tool Co.,*

*Inc. v. Oakbrook Int'l., Inc.*, 56 F. Supp.2d 134, 141 (D. Mass. 1999) ("Other considerations

being equal, the tie breaking factor is the 'great weight' that this court must give to the plaintiff's

choice of forum."); *Holmes Group, Inc.*, 249 F. Supp.2d at 17 ("Where a plaintiff chooses his

home forum, such a choice usually represents considerations of convenience, rather than

harassment of the defendant.").  NMT's choice of its home forum should not be disturbed.

### b.    Massachusetts Is Not Inconvenient For AGA And Is More Convenient For NMT.

Although AGA is a Minnesota corporation with offices in Minnesota, given that AGA

never sought to transfer the original Massachusetts litigation to Minnesota, it would be difficult

to conclude that Massachusetts is *inconvenient* for AGA.  In any event, Massachusetts is far

more convenient for NMT.  NMT is a Massachusetts corporation with its sole place of business

located at 27 Wormwood Street, Boston, Massachusetts, only minutes from the courthouse.

(Davis Decl., ¶ 3)  Massachusetts is, therefore, certainly more convenient for NMT and for each

of the NMT witnesses.

c.    **Massachusetts Is Also More Convenient For The Witnesses.**

The convenience of the witnesses is an important factor in the transfer analysis.  *See Princess House*, 136 F.R.D. at 18.  The party seeking transfer "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 4 (D. Mass. 1987).  AGA – the moving party here – has fallen far short of this burden.

AGA identifies only three likely witnesses in its moving papers – Kurt Amplatz, Curtis Amplatz, and Dr. Lloyd Marks, the named inventor on the '420 patent.  (AGA Br. at 11)   Of those witnesses, Kurt and Curtis Amplatz are apparently located in Minnesota.[8]  Dr. Marks, on the other hand, resides in Westfield, New Jersey (near New York City), only a short four-hour drive from Boston, and much closer to Massachusetts than to Minnesota.  (Davis Decl., ¶ 6)

The inquiry does not end here.  AGA fails to identify any of the numerous additional likely witnesses for which *Massachusetts* would undeniably be more convenient.

Although it is presently too early to determine exactly which witnesses each party will call, Massachusetts is more convenient for *all* of NMT's likely witnesses, who are located either at NMT's Boston headquarters or in the Boston area.[9]  (Davis Decl. ¶ 4)

In addition, the patent issues raised by this case necessarily will involve an examination of the invention's conception and reduction to practice, as well as the filing, prosecution, re-examination, and appeal of the patent.  Massachusetts is again more convenient for *all*

---

[8]    AGA claims that it "may" be denied testimony from these witnesses if the case proceeds in Massachusetts because they no longer work for the company and would be outside subpoena range.  (AGA Br. at 11)  It offers no factual support for the suggestion that these witnesses would not voluntarily appear at trial.  Even if this were the case, AGA could secure videotaped deposition testimony.

[9]    *All* of the following potential witnesses for NMT are located in the Boston area:  John E. Ahern (Chairman, President, and Chief Executive Officer); Richard E. Davis (Vice President and Chief Financial Officer); Rudy Davis (Clinical Affairs Project Director); Carol Ryan Devellian (Vice President, Research and Development); John Wright, Jr. (Program Director); and Jim Scutti (Senior Technical Consultant).  (Davis Decl., ¶ 4)

witnesses who may potentially testify on these issues. As described above, the inventor,
Dr. Marks, resides in New Jersey, far closer to Massachusetts than to Minnesota. (Davis Decl.,
¶ 6) In addition, the original prosecuting attorneys, from the law firm of Ratner and Prestia,
reside in or near Valley Forge, Pennsylvania, also closer to Massachusetts than to Minnesota.
(Davis Decl., ¶ 8) Finally, attorney George Myers, who prosecuted the re-examination and
appeal of the '420 patent before the Patent Office examiner and the Board, resides near Boston.
(Davis Decl., ¶ 10)

Moreover, although NMT's complaint for infringement may ultimately require a
comparison of the asserted claims to the accused Amplatzer® products, it is unclear at this point
whether all of the individuals responsible for the research, design, development, and use of the
Amplatzer® products reside in Minnesota. Although AGA claims that Kurt and Curtis Amplatz
are the "only" witnesses who can provide such testimony (AGA Br. at 11), AGA has trained at
least thirteen *Boston* doctors to use Amplatzer® products. (Saxton Decl., Ex. R) Presumably,
given that those doctors are using such products in their operating rooms, they are extremely
familiar with their design and use. Therefore, Massachusetts is more convenient for the majority
of likely witnesses. *See Princess House*, 136 F.R.D. at 18 (convenience of witnesses is a
significant factor in the transfer analysis).

>        d.        **Massachusetts And The East Coast Offer Greater Access Than
>                   Minnesota To Sources Of Proof.**

Though AGA declines to address this factor, given that NMT is located in Massachusetts,
the named inventor of the '420 patent is in New Jersey, the law firm that prosecuted the '420
patent is in Pennsylvania, the attorney who handled the re-examination and appellate
proceedings lives near Boston, and identical litigation was previously pending in this Court, it is
no surprise that most of the sources of proof critical to this case are also located in

Massachusetts, or elsewhere on the East Coast in close proximity to Massachusetts.  In particular, all of the documents and things relating to the conception, reduction to practice, filing, and prosecution of the '420 patent are located in Massachusetts, New Jersey, and Pennsylvania. (Davis Decl., ¶¶ 6,9)  Indeed, not only are these documents maintained in NMT, the inventor, and the prosecuting attorney's files, most, if not all, of these documents have already been collected and produced in Massachusetts in connection with the original litigation in this Court. (Davis Decl., ¶ 12)  These types of documents are particularly critical where – as here – AGA has asserted that the '420 patent is invalid and/or unenforceable.  In addition, all of NMT's financial records are similarly located in or near Massachusetts.  (Davis Decl., ¶ 5)

Although AGA may possess certain relevant documents or other materials in Minnesota, most of that documentary evidence was already produced during discovery in the original litigation in this Court and, therefore, is already in Massachusetts.  Accordingly, because most of the known sources of proof in this case are located either in or near Massachusetts, this Court should deny transfer and retain this litigation.  *See Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp.2d 102, 116 (D. Mass. 2003) (recognizing availability of documents as factor in the transfer analysis and denying transfer); *Hyundai Space & Aircraft Co., Ltd. v. Boeing Co.,* No. C-99-3255 S1, 1999 WL 910131, at *5 (N.D. Ca. Oct. 12, 1999) (favoring transfer where there was a "glaring disparity" between venues of sources of proof).

US1DOCS 5020472v3

## IV.    CONCLUSION

For the reasons set forth above, NMT respectfully requests that this Court deny AGA's

Motion in its entirety.

## V.    REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), NMT respectfully requests oral argument on AGA's

Motion.

Respectfully submitted,


/s/ Kate Saxton _____ _____
William F. Lee  (BBO #291960)
Cynthia D. Vreeland  (BBO #635143)
David L. Cavanaugh  (BBO #566162)
Daniel M. Esrick  (BBO #647676)
Kate Saxton  (BBO #655903)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel.:    (617) 526-6000
Fax:    (617) 526-5000

*Attorneys for Plaintiff Nitinol Medical*
*Technologies, Inc. d/b/a NMT Medical, Inc.*

Dated:    March 28, 2005

-18-