IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NMT Medical, Inc.

       Plaintiff,

v.                                                    Civil Action # 04-12565-NG

AGA Medical Corporation,

       Defendant.

**AGA'S MOTION FOR LEAVE TO FILE A**
**REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

AGA Medical Corporation ("AGA") hereby requests leave to file the attached "Reply Memorandum In Support of Its Motion To Dismiss, Or In The Alternative, To Transfer Venue", and the Supplemental Declaration of Jodi Raus. As grounds for this motion, AGA states as follows:

1.      NMT Medical, Inc. ("NMT") has argued that the "first-to-file" rule is triggered when a summons and complaint are served. Pursuant to Fed. R. Civ. P. 3, however, a federal action is commenced upon filing. The reply brief cites relevant authority to show that filing of a law suit is the key event for commencing a law suit.

2.      In addressing the convenience of the witnesses, NMT has suggested that Boston doctors would be an adequate substitute for the live, in court testimony of Dr. Kurt Amplatz, and the other inventors of the accused products. The reply brief demonstrates that Dr. Amplatz is such an important witness that the absence of his live, in-court testimony during trial would severely prejudice AGA's affirmative defenses.

3.      Circumstances have changed since NMT filed its now-dismissed law suit against AGA in this Court in 1998.  Given that the '98 Action has not been on the Court's docket for over four years, and that re-examination of the patent-in-suit has generated a new prosecution history, there is no significant advantage in terms of judicial economy for this matter to be litigated in Massachusetts rather than Minnesota.

4.      NMT cites no controlling authority for the proposition that declaratory judgment actions are merely an attempt to usurp a patentee's choice of forum.  NMT also ignores the authority of the Federal Circuit on this issue, and the fact that NMT had issued an indeterminate threat in the press intended to chill AGA and its customers.  The reply brief demonstrates that, when the Court applies the correct law to all of the relevant facts, this case should be dismissed or transferred to Minnesota.

For the foregoing reasons, AGA respectfully requests that the Court grant to AGA leave to file the attached memorandum and declaration.

Respectfully submitted,

Dated:  April 1, 2005

/s/ James T. Nikolai
Thomas C. O'Konski (BBO #378265)
John L. Capone (BBO # 656150)
Cesari and McKenna, LLP

88 Black Falcon Avenue
Boston, Massachusetts 02210
(617) 951-2500

James T. Nikolai (admitted pro hac vice)
Nikolai & Mersereau, P.A.
900 Second Avenue South, Suite 820
Minneapolis, MN 55402
(612)339-7461

**Attorneys for defendant**
**AGA MEDICAL CORPORATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NMT Medical, Inc.

        Plaintiff,

v.                                      Civil Action # 04-12565-NG

AGA Medical Corporation,

        Defendant.

## AGA MEDICAL CORPORATIONS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

This matter should proceed in Minnesota rather than Massachusetts. The reasons are several-fold:

1.      AGA filed its declaratory judgment action in Minnesota eight weeks before this action was filed.

2.      Key non-party witnesses are located in Minnesota. In contrast, NMT has not identified any material witnesses located in Massachusetts who are not under NMT's control.

3.      Given the changes in circumstances that naturally occurred since 1998, there is no significant advantage in terms of judicial economy for this matter to be litigated in Massachusetts rather than Minnesota.

4.      The action filed by NMT in 1998 ("the '98 Action") was dismissed because NMT was neither ready, willing nor able to prosecute that case even though it had been stayed for two and one-half years.

AGA filed its declaratory judgment action in Minnesota first, and with good reason. Its choice of forum should be respected and this case should be dismissed in favor of the Minnesota action, or, transferred to Minnesota and consolidated with the Minnesota action.

I.    **THE FIRST-TO-FILE RULE STRONGLY FAVORS TRANSFERRING THIS CASE TO MINNESOTA.**

Application of the "First-To-File" Rule is straightforward:  "[w]here two identical actions are pending concurrently in two federal courts, the first filed action is generally preferred, even if it is a request for a declaratory judgment."  Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp.2d 12, 15 (D. Mass. 2002).  There are two actions pending between the parties. AGA filed its declaratory judgment action in Minnesota on October 13, 2004.  NMT then filed this action on December 7, 2004.  Applying the general presumption in favor of the first-filed action leads only to one conclusion – this action should be dismissed in favor the Minnesota declaratory judgment action.

A.    **The '98 Action Has No Bearing On The Application of the First-To-File Rule.**

The case filed by NMT against AGA in 1998 and dismissed in 2003 is no longer pending. NMT did not "revive" the '98 Action by filing this action.  It started a whole new action.  NMT fails to cite any authority suggesting that when a court dismisses an action, that it has merely temporarily stayed the case until the plaintiff gets around to "reviving" it.  It is a fundamental point of law that a dismissal without prejudice is a final termination of an action even thought it does not bar a second suit.  9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2372 (1994); see also Semteck Int'l Inc. v. Lockheed Martin Corp., 531 U. S. 497, 505 (2001)(distinguishing "dismissal without prejudice" from "dismissal with prejudice"); Sandstrom v. Chemlawn Corp., 904 F.2d 83, 86 (1st Cir. 1990)(dismissal without prejudice "wipes the slate clean"); Norman v. Arkansas Dept. of Education, 79 F.3d 748, 751 (8th Cir. 1996)(a dismissal without prejudice is to leave the parties as if the action had never been brought).

The dismissal of the '98 Action was without prejudice as to *either party*.  NMT notes that AGA had filed a counterclaim for declaratory relief in the '98 action.  Therefore, one consequence of the dismissal of the '98 Action was to preserve AGA's right to file its declaratory judgment action in its choice of forum.  Any other conclusion does not comport with the meaning of "dismissal without prejudice."  See Semteck Int'l, 531 U. S. at 505 (an ordinary consequence of a dismissal without prejudice is not barring the claim from *other* courts.)

**B.    Filing, Not Service, Of A Complaint Commences An Action In Federal Court.**

Federal Rule of Civil Procedure 3 provides that "[a] civil action is commenced by filing a complaint with the court."  This language makes clear that the filing of the complaint is the key event in commencing a civil action.  See Slidell, Inc. v. Archer Daniels Midland Co., No. Civ 02-4841, 2003 U. S. Dist. LEXIS 15310, at *13 (D. Minn. Sept. 2, 2003); see also Williston Basin Interstate Pipeline Co. v. Sheehan Pipe Line Constr. Co., 316 F. Supp.2d 864, 867 (D.N.D. 2004)(same); Ill. Blower, Inc. v. Deltak, L.L.C. No. 04-0341, 2004 U. S. Dist. LEXIS 5838, at *6 (N. D. Ill. April 6, 2004) (most courts in the 8th Circuit consider filing, rather than service, as determinative of the "first-to-file" rule).  The rule is, after all, called the "first to *file*" rule.  AGA filed its declaratory judgment action *eight weeks* before NMT filed this action.  The declaratory judgment action should therefore have priority under the first-to-file rule.

NMT argues that the first-to-file rule should be ignored because the complaints in the two cases were served on the same day.  No authority is cited for this proposition.  Further, NMT fails to tell the Court that a courtesy copy of AGA's complaint in the Minnesota declaratory judgment action was delivered to NMT's counsel at the time it was filed.  NMT also fails to tell the Court that it only served its complaint after AGA's counsel left a message with NMT's counsel indicating AGA was serving its complaint.

**II.    THE "CONVENIENCE" FACTORS WEIGH IN FAVOR OF DISMISSING THIS
ACTION, OR, TRANSFERRING IT TO MINNESOTA.**

If this case is dismissed or transferred to Minnesota, NMT will still have its day in court.
It will still have its patent infringement action tried by a distinguished jurist in Minnesota.  It will
still be able to compel its employees, licensor, and attorneys to testify in Court.  Conversely, if
AGA's motion is denied, AGA may be denied live, in-court testimony of important fact
witnesses who cannot be compelled to appear in this Court.  For this reason alone, the Court
should grant AGA's Motion and dismiss this action, or, in the alternative, transfer venue to
Minnesota.

**A.    Minnesota Is More Convenient for the Witnesses.**

The convenience of the expected witnesses is "probably the most important factor" in the
transfer analysis.  Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991); see also
Workgroup Tech. Corp. v. MGM Grand Hotel, 246 F. Supp.2d 102, 1161 (D. Mass.
2004)(same); Atari v. UPS, 211 F. Supp.2d 360, 362 (D. Mass. 2002)(same).  The court should
consider the nature and quality of the witness testimony in relation to the issues in the case.  See
Atari, 211 F. Supp.2d at 364.  "A district court should procure live testimony of material non-
party witnesses at trial rather than being forced to rely upon deposition evidence.  This is
especially so when the qualitative value of the witnesses' testimony is high."  Princess House,
136 F.R.D. at 20.

There are at least three key non-party witnesses who reside in Minnesota – Dr. Kurt
Amplatz, Curtis Amplatz and Dr. Frank Kotula.  Dr. Amplatz is not only one of the inventors
credited with inventing the accused products, but is also considered a pioneer in the relevant
technology.  Dr. Amplatz has pioneered the use of the metal alloy nitinol in guide wires, dilators

for endourology, occluders and filters, foreign body retrieval devices and thrombectomy devices. (Raus Suppl. Decl. ¶ 2). Dr. Amplatz will be in a unique position to testify as to the conception and reduction to practice of the accused device, how the accused device works, and the level of skill in the art of the claimed invention. His testimony will likely directly rebut the testimony of Dr. Marks, the owner of the patent-in-suit and licensor of that patent to NMT. It would be manifestly unfair to AGA if it were forced to substitute the deposition of Dr. Amplatz for "the real deal."

In response, NMT suggests that AGA could just call doctors residing in Boston to testify at trial. (NMT's Br. at 16). The suggestion is specious. None of these doctors would be competent to testify concerning what went into the conception or reduction to practice of the AMPLATZER® devices accused of infringement in this dispute. Nor would they be competent to directly rebut whatever testimony is elicited from Dr. Marks during trial on these matters or as Dr. Marks' testimony might relate to other matters including, for example, the level of skill in the art of the claimed invention.

In addition to Dr. Amplatz, Curtis Amplatz and Dr. Frank Kotula are co-inventors of the accused AMPLATZER® devices. (Raus Suppl. Decl. ¶ 3). Dr. Kotula resides in Minnesota and is no longer employed by AGA. (Id.) Dr. Kotula is wheelchair bound. Like Dr. Amplatz, Dr. Kotula may also provide testimony concerning conception, reduction to practice that would corroborate or supplement Dr. Amplatz' testimony and rebut any related testimony that might be offered by Dr. Marks. AGA submits that it would be substantially more difficult for Dr. Kotula to travel to Massachusetts to testify in this case rather than permitting him to testify in his home state of Minnesota. (Id.) NMT's witness list, in contrast, can all be compelled to appear in Minnesota, either by the Court, or by virtue of their contractual relationships to NMT.

NMT cites a number of its employees who they plan on calling at trial.  (NMT's Br. at 15, n. 9).  Because they are employees, NMT can ensure their appearance in Minnesota.  See Sigros v. Walt Disney World Co., 129 F. Supp.2d 56, 71 (D. Mass. 2001).

NMT also suggests Dr. Marks will be a critical witness.  He resides in New Jersey, not Massachusetts.  He is therefore beyond the subpoena power of this Court, and will be voluntarily appearing on behalf of NMT at trial.  It would be no less convenient for Dr. Marks to testify in Minnesota.  While the drive from New Jersey to Massachusetts might be only four hours long (NMT's Br. at 15), the flight from New York to Minnesota is also a mere four hours.  (Raus Suppl. Decl. ¶ 4).  Further, as NMT has conceded, Dr. Marks has a real interest by virtue of his license agreement with NMT to assist NMT in litigation related to the '420 patent.  This suggests that if he is willing to appear in Massachusetts, he would also be willing to appear in Minnesota.  More importantly, Dr. Marks is a named party to the declaratory judgment action.  The Minnesota court can therefore compel his attendance.

NMT asserts that Dr. Marks' patent attorneys will have relevant testimony.  Again, they are beyond the subpoena power of the Court.  Presumably because these attorneys will have to voluntarily travel from Valley Forge, Pennsylvania to wherever the case is venued, the travel itself is not that much of a burden.  Second, it is unclear what testimony the prosecuting attorneys can provide that will be of any help.  The prosecution history of the '420 patent will speak for itself. Accordingly the convenience of these witnesses is irrelevant to the Court's calculus on this point.

In sum, the convenience of the witnesses greatly favors the Minnesota court.  In Minnesota, AGA will be able to access their best witnesses – the inventors of the accused products.  In Minnesota, NMT will still have access to the live, in-court testimony of its

employees and licensor.  In Massachusetts, however, AGA  would have to substitute deposition evidence for the live testimony of the inventors of the accused product, and would lose the opportunity to provide live rebuttal testimony.  Since Dr. Amplatz, Mr. Amplatz, and Dr. Kotula are non-parties they could refuse to cooperate with AGA and would be outside the subpoena power of this Court, this alone gives Minnesota a unique benefit as a forum over this venue.

> **B.    The Remaining "Convenience" Factors  Also Favor Minnesota As The More Appropriate Venue For This Litigation.**

Minnesota is the most convenient for both NMT and AGA for other reasons, as well. NMT has already consented to prosecute a patent infringement action in Minnesota against Cardia, Inc.  By consenting to the jurisdiction in Minnesota in that case, NMT  has conceded that finding local counsel in Minnesota, transferring documentary evidence to Minnesota, and attending trial in Minnesota is not so great a hardship that this case must be venued in Massachusetts.

Moreover, the only "conveniences" that NMT has identified is that documentary evidence related to the invention and prosecution of the '420 patent, and that counsel that prosecuted the re-examination of the '420 patent are located near Massachusetts.  (NMT's Br. at 17).  However, as noted above, NMT has conceded that documents are mobile.  Since NMT's chosen venue is Massachusetts, any document that is shipped from New Jersey or Pennsylvania to Massachusetts can also be shipped to Minnesota.  In fact, since AGA's counsel is located in Minnesota, these documents will inevitably make their way to Minnesota regardless of where this case is finally venued.  See Princess House 136 F.R.D. at 21.  Moreover, the testimony of its re-examination counsel will likely prove irrelevant as the re-examination file history for the '420 patent will "speak for itself."

Given that Massachusetts offers no convenience to AGA, and no particular convenience to NMT, the convenience of AGA's non-party witnesses weighs heavily in favor of dismissal or transfer.

### III.  "SPECIAL CIRCUMSTANCES" FURTHER WEIGH IN FAVOR OF DISMISSING THIS ACTION OR TRANSFERRING TO MINNESOTA.

#### A.     The Re-Examination Justifies Transferring This Action to Minnesota.

NMT has suggested that your Honor's familiarity with the issues arising from the '98 Action will warrant retention of jurisdiction.  However, the '98 Action has not been active on the Court's docket since April, 2001 when it was stayed.  Since that time, much has changed.

First, the '420 patent now has a different specification, different prosecution history, and different claims than it did in the '98 Action.  NMT sought re-examination of the '420 patent in light of prior art cited by AGA during the now terminated '98 Action.  During re-examination, the Examiner routinely rejected all the claims of the '420 patent.  To overcome these rejections, the drawings, the specification, *and* the claims to the '420 patent were all amended.  (Raus Suppl. Decl. ¶ 5).  These changes will affect not only NMT's case, but the factual basis for AGA's statutory defenses.  These changes and the passage of time place your Honor and Judge Rosenbaum in Minnesota on an equal footing when it comes to quickly being able to come up to speed on the issues.

More specifically the patent that was the subject of the '98 Action had only 11 claims.  NMT attempted to add more than 70 claims to the patent during re-examination.  The patent that is the subject of the two concurrently pending actions has many more claims than it did at the time of the '98 Action.  In its brief, NMT has not suggested that it will not assert these news claims.  The court, no matter where the case is venued, will have to interpret these claims, test

their validity and a jury will determine if the claims read on the accused device.  These numerous

new claims show that this action is different from the '98 Action.

Second, the previous discovery of the '98 Action does not weigh in favor of continuing

the litigation in this Court.  Discovery materials in the '98 Action were routinely shipped

between Minnesota and Massachusetts.

Third, the re-examination will undoubtedly require *new* discovery pertaining to the new

specification, new claims, and new drawings.  Discovery related to events occurring since the

'98 Action was stayed in April of 2001 will obviously need to take place.  Again, this discovery

can be conducted under the supervision of the Minnesota court, just it as it could under this

Court's supervision.

### B.    NMT's Pre-Filing Conduct Justified AGA's Declaratory Judgment Action.

NMT issued a press release on September 7, 2004 claiming that the Board of Patent

Appeals' decision was "an important step in its *patent infringement efforts against AGA*."

(Emphasis added).  NMT could have, of course, chosen instead to assert its new claims by filing

suit.

NMT was playing a game of "ring and run", which the Declaratory Judgment Action was

enacted to prevent.  See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735

(Fed. Cir. 1988) (the Declaratory Judgment Act was enacted to prevent extra-judicial patent

enforcement).  The purpose of a Declaratory Judgment action in a patent case is to provide the

allegedly infringing party relief from uncertainty and delay regarding its legal rights.  See

Electronics For Imaging, Inc. v. Coyle, 394 F.3d 1341, 1346 (Fed. Cir. 2005).  Such uncertainties

include whether there will be legal proceedings at all, whether one will have to incur the expense

and inconvenience of litigation, how the accusation will affect the threatened parties' customers, and whether to reserve funds for potential damages. Id.

Declaratory justicability in a patent dispute requires (1) a threat or other action of a patentee whereby the declaratory plaintiff has a reasonable apprehension that it will be sued for infringement; and (2) activity by the declaratory plaintiff that constitutes the alleged infringement. Capo, Inc. v. Dipotics Med. Prods., 387 F.3d 1352, 1355 (Fed. Cir. 2004). When these criteria are met, the declaratory judgment should proceed. Id. NMT's September 7, 2004 press release represented a clear threat that gave AGA the reasonable apprehension that it would be sued by NMT for patent infringement. AGA was making the accused AMPLATZER® devices. If NMT did not want AGA to file its declaratory judgment action in Minnesota, then it should not have issued a press release attempting to chill AGA's sales of AMPLATZER® devices. Alternatively, it should have filed suit in Massachusetts before issuing that press release.

Unwilling to admit that issuing its press release justified AGA's filing a declaratory judgment action against it, NMT instead tries to undermine the application of the first-to-file rule in declaratory judgment cases. In intellectual property cases, the fact that the first filed action is a declaratory judgment action does not bar application o the first-filed presumption. See Reebok Int'l Ltd. V. Dunkadelic, Inc., Civ. No. 03-11471, 2004 U. S. Dist. LEXIS 3167, at *11 (D. Mass. month day, 2004); see also Coyle, 394 F.3d at 1348 (the anticipatory nature of a suit is but a factor to weigh); Lab Corp. of Am. Holdings v. Chiron Corp. 384 F.3d 1326, 1330 (court & year)(Federal Circuit law controls whether a properly brought declaratory judgment action should yield to a later brought patent infringement action).

Finally, NMT tries to characterize AGA's declaratory judgment action as a premature "race to the courthouse." (NMT's Br. at 12). In fact, it was not a race at all. NMT issued its press release on September 7, 2004. AGA filed its declaratory judgment in action on October 13, 2004. AGA let NMT's counsel know it had filed the declaratory judgment action the very next day. NMT then waited until December 7, 2004, to finally initiate this action. This fourteen week delay between the press release and filing this action suggests that NMT was in no hurry to get to the courthouse, and that no lawsuit was imminent. Likewise, the three and a half years between the time NMT sought to stay the '98 Action and the commencement of this case also suggests that NMT was in no hurry.

To justify its delay, NMT first argues that it was waiting for a final receipt of a formal re-examination certificate from the Patent Office. (NMT's Br. at 12, n. 7). Yet, NMT did not actually wait for a formal certificate from the patent office to either file this action, or serve the summons and complaint on AGA. NMT filed its action on December 7, 2004, and served it on January 20, 2005. It did not receive a communication from Examiner Thaler regarding the re-examination certificate until January 26, 2005. In fact, as of the date of the filing of this reply memorandum, the re-examination certificate has yet to be formally granted.

NMT's second rationalization for its delay is that AGA "should have known of NMT's intention to revive its litigation in Massachusetts." (NMT's Br. at 13). First, this rationalization cuts both ways – NMT should have known that AGA would bring a claim for declaratory judgment since it did so as a counterclaim in the '98 Action. Second, NMT's threat was indeterminate. It said that the re-examination was an "important step in [NMT's] patent infringement efforts against AGA." Yet, it did not say when or where litigation was going to

take place.  Clearly, given the indeterminate nature of the threat, AGA was more than reasonable in bringing its declaratory judgment action to resolve the uncertainties mentioned above.

## CONCLUSION

For the reasons set forth above, AGA respectfully requests this Court to grant AGA's motion to dismiss this action, or, in the alternative transfer venue to the District of Minnesota.

Respectfully submitted,

Dated:  April 1, 2005

/s/ James T. Nikolai
Thomas C. O'Konski (BBO #378265)
John L. Capone (BBO # 656150)
Cesari and McKenna, LLP

88 Black Falcon Avenue
Boston, Massachusetts 02210
(617) 951-2500

James T. Nikolai (admitted pro hac vice)
Nikolai & Mersereau, P.A.
900 Second Avenue South, Suite 820
Minneapolis, MN 55402
(612)339-7461

**Attorneys for defendant
AGA MEDICAL CORPORATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NMT Medical, Inc.

          Plaintiff,

v.                                                                    Civil Action # 04-12565-NG

AGA Medical Corporation,

          Defendant.

## SUPPLEMENTAL DECLARATION OF JODI RAUS

I, Jodi Raus, hereby declare under penalty of perjury as follows:

1.      I am the Director of Regulatory Affairs for AGA Medical Corporation ("AGA") since the inception of the company 1997.  I submit this declaration to supplement my declaration submitted in support of AGA's Motion to Dismiss, or, in the Alternative, to Transfer Venue to the U. S. District Court for the District of Minnesota.

2.      As I stated in my previous declaration, Dr. Kurt Amplatz and Mr. Curtis Amplatz are the named inventors on AGA's patents covering the AMPLATZER® devices.  Dr. Amplatz is widely considered a pioneer of interventional radiology.  Dr.  Amplatz has been awarded over 100 patents, on nitinol guide wires, dilators for endourology, occluders and filters, foreign body retrieval devices and thrombectomy devices.   In addition Dr. Amplatz has published more than 650 research papers and seven books.  He has won gold medals for his distinguished service in the field of radiology.  Dr. Amplatz was a professor of radiology at the University of Minnesota Hospitals.

3.      Dr. Frank Kotula is also a named inventor on the patents covering the AMPLATZER® devices.  He resides in Minnesota and is not an employee of AGA.  He is wheelchair bound.

4.      Attached as Exhibit 1 to this Declaration is an printout from www.expedia.com showing that flight times between New York City and Minneapolis is roughly 4 hours.

5.      During prosecution of the re-examination of the '420 patent, Dr. Marks made several amendments to the drawings, specification and claims of the '420 patent.  On June 20, 2002, the drawings were changed.  On November 27, 2002, Figure 1 of the '420 patent was amended.  On May 7, 2003, Dr. Marks added a paragraph to the specification.  References to these changes to the drawings, specification, and claims are found in Exhibit N to my Declaration filed with this motion.

Respectfully submitted,

Dated:  __March 31, 2005_____        __/s/ Jodi Raus_____
                                          Jodi Raus
                                          Directory of Regulatory Affairs
                                          **AGA MEDICAL CORPORATION**

**EXHIBIT 1**

 **Expedita.com**  THE **APPRENTICE**

*Trump World Magazine* and Expedia present
**The Apprentice Legend Cruise**
Join cast members, industry leaders, and fans



| home | flights | hotels | cars | vacation packages | cruises | activities | deals & destinations | maps | corporate travel |

**Welcome** - Already a member? Sign in       🖳 Site Map | 🖳 My Trips | 🖳 My Account | 🖳 Customer Support

Start search over

## New York, NY (NYC) to Minneapolis, MN (MSP)



Change your search

Departure airport:
NYC (New York)

Destination airport:
MSP (Minneapolis)

Departing: (mm/dd/yy)
4/4/2005
Anytime

Returning: (mm/dd/yy)
4/8/2005
Anytime

Airline: ℹ️ More Info
No Preference
☐ Nonstop flights only

Change Travelers
**1 Adult**
Change travelers

⇥ - Indicates flight is operated by another airline. Move your mouse over the icon for details.



|  | All Results | Northwest | ATA | Sun Country Airlines | AirTran Airways | US Airways |
|---|---|---|---|---|---|---|
|  |  | nwa. |  |  | a |  |
| non stop | from $261 see below | from $261 |  | from $273 |  |  |
| 1 stop | from $267 see below | from $267 | from $268 |  | from $559 | from $902 |
| 2+ stops |  |  |  |  |  |  |

Show more

**Note:** The prices shown below are e-ticket prices and include all taxes and fees. If your itinerary requires pa there will be an additional charge. These results cover a metro area with several airports. Review your choic

## 1  Choose a departing flight                                      View results by:  flight se

Sort by:  ⦿ Price    ○ Shortest flights    ○ Departure time    ○ Arrival time

⇥ from **$261** Roundtrip

**11:20 am** Depart New York (JFK)          Mon **4-Apr**          nwa. **Northwest** 737
Arrive Minneapolis (MSP) **1:28 pm**         Duration: 3hr 8mn                Nonstop flight

⟳ Choose this departure

⇥ from **$267** Roundtrip

**12:30 pm** Depart New York (JFK)          Mon **4-Apr**          nwa. **Northwest**
Arrive Minneapolis (MSP) **4:00 pm**         Duration: 4hr 30mn      ⇥4716 / 745
                                                                     Connect in Detroit (DTW)

⟳ Choose this departure

⇥ from **$267** Roundtrip

**12:30 pm** Depart New York (JFK)          Mon **4-Apr**          nwa. **Northwest**
Arrive Minneapolis (MSP) **4:09 pm**         Duration: 4hr 39mn      ⇥4716 / 751
                                                                     Connect in Detroit (DTW)

⟳ Choose this departure

⇥ from **$267** Roundtrip

**4:11 pm** Depart New York (JFK)           Mon **4-Apr**          nwa. **Northwest** 1584
Arrive Minneapolis (MSP) **8:02 pm**         Duration: 4hr 51mn      / 761
                                                                     Connect in Detroit (DTW)

⟳ Choose this departure



BLOCKBUSTER Online℠

Try It FREE ▶

Unlimited DVD Rentals Only $14.99 A Month!

More Than 25,000 Movies

2 FREE In-Store Rentals Every Month

FREE Shipping

No Late Fees!

Terms and Conditions

from **$268** Roundtrip

4:10 pm Depart New York (LGA)
Arrive Minneapolis (MSP) 8:28 pm

Mon **4-Apr**
Duration: 5hr 18mn

ATA 4209
1 stop

⊕ **Choose this departure**

from **$270** Roundtrip

1:45 pm Depart New York (LGA)
Arrive Minneapolis (MSP) 5:33 pm

Mon **4-Apr**
Duration: 4hr 48mn

ATA 4211 / 4293
Connect in Chicago (MDW)

⊕ **Choose this departure**

from **$270** Roundtrip

6:00 am Depart New York (LGA)
Arrive Minneapolis (MSP) 9:50 am

Mon **4-Apr**
Duration: 4hr 50mn

ATA 4219 / 4151
Connect in Chicago (MDW)

⊕ **Choose this departure**

from **$270** Roundtrip

6:45 pm Depart New York (LGA)
Arrive Minneapolis (MSP) 10:39 pm

Mon **4-Apr**
Duration: 4hr 54mn

ATA 4207 / 4279
Connect in Chicago (MDW)

⊕ **Choose this departure**

from **$270** Roundtrip

7:00 am Depart New York (LGA)
Arrive Minneapolis (MSP) 11:46 am

Mon **4-Apr**
Duration: 5hr 46mn

ATA 4225 / 4673
Connect in Chicago (MDW)

⊕ **Choose this departure**

from **$270** Roundtrip

2:59 pm Depart New York (LGA)
Arrive Minneapolis (MSP) 8:28 pm

Mon **4-Apr**
Duration: 6hr 29mn

ATA 4227 / 4209
Connect in Chicago (MDW)

⊕ **Choose this departure**

PRICE NOTE

For your convenience, we've added estimated price hints to some of these flights. Prices may vary and will be verified prior to purchase.

from **$273** Roundtrip

10:55 am Depart New York (JFK)
Arrive Minneapolis (MSP) 12:45 pm

Mon **4-Apr**
Duration: 2hr 50mn

 **Sun Country Airlines** 246
Nonstop flight

⊕ **Choose this departure**

QUESTIONS?

Can I use a credit card with a billing address outside the U.S.?

from **$309** Roundtrip

7:00 pm Depart Newark (EWR)
Arrive Minneapolis (MSP) 10:39 pm

Mon **4-Apr**
Duration: 4hr 39mn

ATA 4279
1 stop

⊕ **Choose this departure**

Is it safe to buy online?

Need help with this page?

Other FAQs

from **$309** Roundtrip
10:20 am Depart Newark (EWR)
Arrive Minneapolis (MSP) 2:08 pm

Mon **4**-Apr
Duration: 4hr 48mn

ATA 4275
1 stop

**Choose this departure**

---

from **$310** Roundtrip
6:00 am Depart Newark (EWR)
Arrive Minneapolis (MSP) 9:50 am

Mon **4**-Apr
Duration: 4hr 50mn

**Web Fare**
ATA 4273 / 4151
Connect in Chicago (MDW)

**Choose this departure**

---

from **$310** Roundtrip
7:45 am Depart Newark (EWR)
Arrive Minneapolis (MSP) 11:46 am

Mon **4**-Apr
Duration: 5hr 1mn

**Web Fare**
ATA 4271 / 4673
Connect in Chicago (MDW)

**Choose this departure**

---

from **$541** Roundtrip
7:40 pm Depart Newark (EWR)
Arrive Minneapolis (MSP) 12:33 am
[i] +1 day

Mon **4**-Apr
Duration: 5hr 53mn

**AirTran Airways** 577 / 858
Connect in Atlanta (Hartsfield Intl.)

**Choose this departure**

---

from **$616** Roundtrip
11:30 am Depart Newark (EWR)
Arrive Minneapolis (MSP) 1:24 pm

Mon **4**-Apr
Duration: 2hr 54mn

**Web Fare**
**nwa. Northwest** 1083
Nonstop flight

**Choose this departure**

---

from **$671** Roundtrip
11:45 am Depart Newark (EWR)
Arrive Minneapolis (MSP) 1:45 pm

Mon **4**-Apr
Duration: 3hr 0mn

**Continental**
⇨3355
Nonstop flight

**Choose this departure**

---

from **$671** Roundtrip
3:45 pm Depart Newark (EWR)
Arrive Minneapolis (MSP) 5:45 pm

Mon **4**-Apr
Duration: 3hr 0mn

**Continental**
⇨3435
Nonstop flight

**Choose this departure**

---

from **$671** Roundtrip
7:45 am Depart Newark (EWR)
Arrive Minneapolis (MSP) 9:46 am

Mon **4**-Apr
Duration: 3hr 1mn

**Continental** 270
Nonstop flight

**Choose this departure**

from **$671** Roundtrip

9:05 am Depart Newark (EWR)
Arrive Minneapolis (MSP) **11:14 am**

Mon **4-Apr**
Duration: 3hr 9mn

 **Continental**
⇌2353
Nonstop flight

↻ Choose this departure

---

from **$676** Roundtrip

2:50 pm Depart New York (JFK)
Arrive Minneapolis (MSP) **6:34 pm**

Mon **4-Apr**
Duration: 4hr 44mn

 **Delta** 167 / ⇌5068
Connect in Cincinnati (Cincinnati N. Ky.)

↻ Choose this departure

---

from **$689** Roundtrip

5:50 pm Depart Newark (EWR)
Arrive Minneapolis (MSP) **9:39 pm**

Mon **4-Apr**
Duration: 4hr 49mn

 **United Airlines** 653
1 stop

↻ Choose this departure

---

from **$711** Roundtrip

7:30 pm Depart Newark (EWR)
Arrive Minneapolis (MSP) **11:00 pm**

Mon **4-Apr**
Duration: 4hr 30mn

 **Midwest Airlines** 279 / ⇌2018
Connect in Milwaukee (MKE)

↻ Choose this departure

---

from **$736** Roundtrip

3:15 pm Depart New York (LGA)
Arrive Minneapolis (MSP) **5:07 pm**

Mon **4-Apr**
Duration: 2hr 52mn

 **Northwest** 511
Nonstop flight

↻ Choose this departure

---

from **$738** Roundtrip

4:59 pm Depart White Plains (HPN)
Arrive Minneapolis (MSP) **7:11 pm**

Mon **4-Apr**
Duration: 3hr 12mn

 **Northwest** ⇌3645
Nonstop flight

↻ Choose this departure

---

from **$769** Roundtrip

6:00 am Depart New York (LGA)
Arrive Minneapolis (MSP) **9:53 am**

Mon **4-Apr**
Duration: 4hr 53mn

 **American Airlines** 301
1 stop

↻ Choose this departure

---

from **$818** Roundtrip

6:00 am Depart New York (LGA)
Arrive Minneapolis (MSP) **9:27 am**

Mon **4-Apr**
Duration: 4hr 27mn

 **US Airways** ⇌7140 / ⇌6655
Connect in Chicago (ORD)

↻ Choose this departure

---

from **$874** Roundtrip

8:12 pm Depart Newark (EWR)
Arrive Minneapolis (MSP) **11:40 pm**

Mon **4-Apr**
Duration: 4hr 28mn

 **American Airlines** 1377
1 stop

↻ Choose this departure

Build your own travel agency web site
Case 1:04-cv-12565-NG    Document 19-4    Filed 04/01/2005    Page 6 of 6
Page 5 of 5

about Expedia, Inc.  |  Expedia, Inc. terms of use  |  privacy policy  |  become an affiliate  |  advertising  |  jobs
site map  |  hotels  |  cars  |  cruises

Expedia, Inc. is not responsible for content on external Web sites. ©2005 Expedia, Inc. All rights reserved.
Photos: Walter Hodges/Getty Images/The Image Bank, Corbis, Getty Images

Plus sign (+) means taxes and fees are additional.

International sites:  United Kingdom  |  Canada  |  Germany  |  France  |  Italy  |  Netherlands

Partner
sites:  Citysearch  |  Evite  |  Hotels.com  |  HSN  |  Ticketmaster  |  ReserveAmerica  |  Hotwire  |  LendingTree  |  RealEstate.com  |  ZeroDeg

Entertainment.com  |  Match.com  |  TripAdvisor  |  CondoSaver.com  |  ClassicVacations.com  |  liveDaily  |  ImprovementsCatalog.com