UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NMT MEDICAL, INC. and LLOYD A. MARKS, | |
| Plaintiffs, | |
| v. | Civil Action No. 04-CV-12565-NG |
| AGA MEDICAL CORPORATION, | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |
| AGA MEDICAL CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 05-CV-11804 NG |
| NITINOL MEDICAL TECHNOLOGIES, INC. d/b/a NMT MEDICAL, INC. and LLOYD A. MARKS, | |
| Defendants. | |

---

**JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER**

---

## REQUEST FOR ORAL ARGUMENT

The parties request that the Court hear oral argument on this motion.

The parties, NMT Medical, Inc. and Lloyd A. Marks (collectively "NMT"), and AGA Medical Corporation ("AGA"), jointly move for entry of the Protective Order accompanying this motion as Exhibit A.  NMT and AGA have one dispute regarding the Protective Order.  The parties explain their positions below and request that the Court endorse one of their positions.

**Background and Nature of the Dispute**

There are two levels of confidentiality specified in the proposed Protective Order. The lower level of confidentiality can be applied to "any trade secret or other confidential research, development, technical, or commercial information" by designating the information as "CONFIDENTIAL." ¶ 4(a). This information may be disclosed to in-house counsel and "one designated non-technical in-house person for each of NMT and AGA, including their related entities, whose advice or input is needed to assist NMT or AGA in the preparation of its case." ¶ 12(a), (c). The higher level of confidentiality can be applied to "highly sensitive financial information, information relating to a party's products under development, or information relating to business planning or competitive analysis" by designating the information as "HIGHLY CONFIDENTIAL ATTORNEYS ONLY." ¶ 4(b).

The parties dispute which persons at the respective companies (if any) would be entitled to have access to information designated "HIGHLY CONFIDENTIAL ATTORNEYS ONLY."

**NMT's Position**

NMT believes that the parties will be exchanging highly sensitive information in this action, such as internal financial information, and that typically companies' interests are best protected by not giving access to persons at the companies. Therefore, NMT would propose that no persons in-house at either company be permitted access to information designated "HIGHLY CONFIDENTIAL ATTORNEYS ONLY." However, NMT understands that AGA would prefer that persons in-house at each company have

access to such highly confidential information, and NMT is willing to compromise to permit such access, provided the effect of granting such access is the same for both sides.

AGA proposes that persons in-house at each company have access to information designated "HIGHLY CONFIDENTIAL ATTORNEYS ONLY," but that this access be limited to lawyers at the respective companies. NMT objects because the effect of granting access to lawyers at AGA would not be the same as the effect of granting access to lawyers at NMT. AGA's outside counsel may communicate, receive instructions from, and be supervised by lawyers at AGA, but the person who serves in that capacity at NMT is not a lawyer. NMT's Vice President and CFO, Mr. Rick Davis, communicates with, instructs, and supervises NMT's outside counsel; he is not a lawyer. Therefore, if persons in-house at each company are to have access to highly confidential information, the critical person at NMT who should have access to this information is Mr. Davis.

While AGA opposes granting Mr. Davis access to information designated "HIGHLY CONFIDENTIAL ATTORNEYS ONLY," the rationale of the cases cited by AGA reinforces NMT's argument that, if in-house persons are to have access, then Mr. Davis should have access. For example, AGA cites cases stating that in-house persons should have access "in order to effectively manage and make strategic decisions throughout this litigation," and "to promote efficiency and early resolution of this matter." *Avery Dennison Corp.* v. *Minn. Mining & Mfg. Co.*, No. A. 01-125, 2001 WL 1339402, at *2 (D. Del. Oct. 26, 2001); *see also Volvo Penta of the Ams., Inc. v. Brunswick Corp.*, 187 F.R.D. 240 (E.D. Va. 1999) (access should facilitate "quick tactical decisions"). Since Mr. Davis manages the litigation for NMT and oversees the strategic

and tactical decision-making, he should have access to provide the recognized benefits of access to NMT.

The parties have agreed that "one designated non-technical in-house person for each NMT and AGA, including their related entities, whose advice or input is needed to assist NMT or AGA in the preparation of its case" can have access to the lower level of confidential information, designated "CONFIDENTIAL."  NMT proposes that, if persons at the respective companies also are to have access to the higher level of confidential information, NMT should similarly be able to designate one non-technical in-house person whose advice or input is needed to assist NMT in the preparation of its case, i.e., Mr. Davis.

The case AGA cites for broadly denying a non-legal, in-house person access to information designated "HIGHLY CONFIDENTIAL ATTORNEYS ONLY," does not support that proposition, rather it suggests that such a person should be non-technical. *See Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20 (D. Del. 1988).   In *Safe Flight*, the court did not allow the President of the plaintiff corporation to have access to the defendant corporation's documents because the President was a technical officer who continued to be involved in the plaintiff's scientific development.  *See id.* at 21-23.  However, the court explicitly endorsed granting access to a non-technical officer, suggesting that the plaintiff "nominate a non-technical officer to … review [] the confidential documents, rather than an officer who is also a working scientist of the corporation."  *Id.* at 22.  Mr. Davis would fill this role in this case.

NMT should not be put at a disadvantage in the preparation of its case because the relevant decision-maker at NMT is a non-lawyer, while the relevant decision-maker at

AGA is a lawyer. The cases cited by AGA do not support giving access to in-house lawyers to the exclusion of other in-house persons. For example, in *Bailey v. Dart Container Corp. of Mich.*, 980 F. Supp. 560 (D. Mass. 1997), the Court not only allowed access to highly sensitive documents to in-house counsel but also to one designated in-house technical expert. *See id.* at 582-83.

AGA's argument in response to NMT's discussion of *Safe Flight* and *Bailey* is contradictory. AGA would have *Safe Flight* stand for the proposition that a scientist should be denied access to confidential material, but would have *Bailey* stand for the proposition that an in-house person should be allowed access to confidential information *because* he has a scientific background. AGA attempts to reconcile these cases by proposing that disclosure should be limited to non-scientific, non-executive in-house persons, but AGA's parsing of these cases distracts from the real issue. The real issue is whether providing access to the confidential information will provide the recognized benefits of access, including facilitating strategic and tactical decision-making, and granting access to Mr. Davis will surely provide these benefits to NMT.

AGA also cites *Phillips Petroleum Co. v. Rexene Prods. Co.*, 158 F.R.D. 43, 45-46 (D. Del. 1994), for the proposition that "it is the type of information in relation to the *role* of the person seeking access that is important in fashioning protection." *Phillips* does not stand for this point. In that case, the parties had previously agreed that Rexene's CEO, Mr. Andrew Smith, would not have access to confidential information, and the Court rejected modifying this agreement over Phillips' objection because Rexene should have addressed this issue when the protective order was first entered:

> The allocation of the decision making authority was known then [at the time that the stipulated protective order was entered]. It has not been

> contended that throughout these proceedings the transpired organizational and personnel charges resulted in changes in the reporting system or chain of command. … The parties did not negotiate the terms of the Protective Order in a vacuum, and voluntarily reached their agreement to facilitate discovery, based in part upon their experiences in past related litigation.

By contrast, here NMT is seeking to ensure that Mr. Davis has access at the start of the case, and there have been substantial personnel changes at NMT since the parties' prior litigation. In view of the present management structure at NMT, it is important for Mr. Davis to have access to confidential information on equal terms with AGA's in-house counsel because he serves the same function for NMT in this litigation.

AGA suggests that access should be limited to attorneys because Mr. Davis would not abide by the Protective Order, but there is no reason to treat Mr. Davis as less honest and law-abiding just because he is not an attorney. AGA's interests will be well protected because Mr. Davis will sign an undertaking that he will abide by the Protective Order. As this Court recognized in *Bailey*, "an affidavit agreeing to be bound by the terms of the order sufficiently protects [Plaintiff's] interests while allowing [Defendant] access to relevant information." 980 F. Supp. at 583. AGA has not met its burden of showing "good cause" to broadly deny Mr. Davis access to all highly confidential information. *Id.* Mr. Davis should be granted access, and if AGA believes it needs greater protection for certain specific information during the course of the litigation, it can always seek supplemental protection, which is the proper course. *See id.* at n.4.

For these reasons, if this Court permits in-house attorneys to have access to information designated "HIGHLY CONFIDENTIAL ATTORNEYS ONLY," then it should also permit Mr. Davis to have access to such information.

**AGA's Position**

AGA agrees that the parties will be exchanging highly sensitive, confidential financial and technical information in this action.  AGA also agrees that the parties' interests are best protected by denying access to highly confidential information to company executives whose job responsibilities include the use of such information to gain a competitive advantage.  Accordingly, it is AGA's position that NMT's CFO should not have access to "highly sensitive financial information" and "information relating to business planning or competitive analysis," because this is precisely the type of information that a financial executive would use to gain a competitive advantage. Thus, AGA proposes that only in-house counsel from each party have access to highly confidential information.  This furthers the goal of permitting the parties to participate fully in strategic decisions relating to the litigation, while at the same time protecting the parties from inadvertent, improper use or disclosure of such information.

**A.    AGA's Proposal Permitting Access to In-House Counsel Promotes Efficiency and Early Resolution of the Action**

It is well established that "in-house  counsel should not be denied access to confidential information produced under the terms of an appropriate protective order." *Avery Dennison Corp.* v. *Minn. Mining & Mfg. Co.*, No. A. 01-125, 2001 WL 1339402, at *2 (D. Del. Oct. 26, 2001).  Indeed, the special role of in-house counsel is widely recognized such that denial of access to in-house counsel based solely on their in-house status is error.  *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984). Numerous courts have emphasized that in-house counsel play a critical role in litigation, and should, therefore, have access even to highly confidential information.  For example, in *Avery Dennison*, the Court granted 3M's motion to allow in-house counsel access to

"top-tier" confidential patent-related information, citing as support 3M's contention that in-house counsel "must be privy" to such materials "in order to effectively manage and make strategic decisions throughout this litigation," and "to promote efficiency and early resolution of this matter."  2001 WL 1339402, at *1.  Similarly, in *Volvo Penta of the Ams., Inc.* v. *Brunswick Corp.*, 187 F.R.D. 240 (E.D. Va. 1999), the parties disputed provisions of the protective order related to in-house counsel's access to confidential materials.  The Court, in granting access to in-house counsel, emphasized "the need for efficient litigation," and noted that parties need in-house attorneys to help make "quick tactical decisions."  *Id.* at 243-44.

AGA's in-house counsel, Mr. Peter Rother, has experience in litigation matters and requires access to highly confidential materials in order to effectively manage this complex dispute.  For example, such information may be required to permit the evaluation of settlement proposals, which may lead to early resolution of this action.  NMT's first proposal, which would not allow any in-house personnel access to such information, would promote neither the economy nor the efficiency that can be gained by allowing in-house counsel to participate fully.

NMT has in-house counsel, and AGA's proposed Protective Order would permit NMT's in-house counsel the same access to top-tier confidential information as AGA's in-house counsel.  Moreover, AGA's proposal is consistent with the protective order entered by this Court in the earlier litigation between NMT and AGA.  In that litigation, the protective order included two tiers of confidentiality, and provided in-house counsel of both parties access to the top-level confidential materials.  Executives, however, were not granted access to the top-level confidential information.  Both AGA and NMT

produced documents in that litigation and, pursuant to the prior protective order, labeled a number of those documents with the highly confidential designation. Those same documents have been produced in this litigation. Nothing has changed. AGA respectfully submits that the Court should adopt the provisions it adopted in the prior protective order and permit in-house counsel access to all confidential information.

**B.    NMT's Proposal to Grant Access to a Non-Lawyer is Fundamentally Unfair**

NMT's alternate proposal, namely, that if AGA's in-house counsel is given access to highly confidential information, then NMT's Chief Financial Officer should be given the same access, defeats the main purpose of this protective order – to protect the parties' highly confidential information. There are significant differences between disclosure of highly confidential information to an attorney and to a CFO.

In-house counsel, "[l]ike retained counsel . . . are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions." *U.S. Steel*, 730 F.2d at 1468; *Boehringer Ingelheim Pharm., Inc.* v. *Hercon Labs. Corp.*, No. 89-484, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990) ("In-house counsel . . . are bound by the Code of Professional Responsibility and subject to sanctions. . . . [T]he risks of disclosure of confidential information, purposeful or inadvertent, by retained counsel are the same as that of in-house counsel").

NMT's CFO, a non-lawyer, is not subject to the attorneys' Code of Professional Responsibility and its concomitant requisites of conduct toward the Court, toward represented parties, and toward non-parties. Although provisions in the proposed protective order (*e.g.*, Paragraphs 7, 10, 11, 14, and 15) address the issue of inadvertent or purposeful disclosure of confidential information, those provisions carry more weight

with attorneys because attorneys are subject to the Code of Professional Responsibility and may be sanctioned or disbarred for unethical conduct, such as the improper use of materials received pursuant to a protective order. The same may not be said of non-lawyers.

The safeguards against misuse of highly confidential information by lawyers have been cited in numerous decisions as the basis for granting in-house counsel access to highly confidential materials, but not granting such access to non-lawyers. *Safe Flight Instrument Corp.* v. *Sundstrand Data Control Inc.*, 682 F. Supp. 20, 23 (D. Del. 1988) (denying plaintiff's president access to confidential information, but allowing in-house counsel access because they "are admitted to the Bar of this Court[,] are officers of the Court and are bound by the Code of Professional Responsibility"); *Boehringer*, 1990 WL 160666, at *2 ("this Court is comfortable with the protections against abusive disclosure that exist such that the balance tips in favor of granting access to plaintiff's counsel"); *Volvo*, 187 F.R.D. at 243; *Avery Dennison*, 2001 WL 1339402, at *2.

NMT's attempt to distinguish *Safe Flight* falls flat. The Court in *Safe Flight* allowed access to the defendant's in-house counsel, but, in order to protect defendant's highly confidential information from competitive misuse, denied access to plaintiff's President, a ***scientist executive,*** because the confidential material at issue was "***scientific*** information." 682 F. Supp. at 21 (emphasis added). The *Safe Flight* court took specific note of the distinction between in-house counsel and other key executives, and recognized long-standing precedents permitting access to the former while denying access to the latter. *Id*. at 22. The same situation obtains in the instant matter and strongly militates against access by NMT's CFO.

NMT's attempt to find contradiction between the holdings of *Safe Flight* and *Bailey* v. *Dart Container Corp. of Mich.*, 980 F. Supp. 560 (D. Mass. 1997), is without merit. In *Safe Flight,* the confidential information was technical information, which the Court allowed an in-house counsel to access, but not an executive with technical experience. 682 F. Supp at 21. In *Bailey*, the confidential information at issue included both technical and business information, such as license agreements and royalty information. 980 F. Supp. at 582. In addition to defendant's in-house counsel, the Court granted a non-executive technical employee access to the confidential information. *Id.* at 583. However, no executive with business expertise was permitted access to plaintiff's confidential business information. Thus, in both *Safe Flight* and *Bailey*, the Courts did not grant access to executives who were in a position to misuse the information.[1]

The highly confidential materials at issue in this case include "highly sensitive financial information, information relating to a party's products under development, or information relating to business planning or competitive analysis," which are exactly the types of materials that a CFO could use to gain a competitive advantage in the marketplace. The case law is clear that it is the type of confidential information in relation to the ***role*** of the person seeking access that is important in fashioning protection. *See, e.g., Phillips Petroleum Co.* v. *Rexene Prods. Co.*, 158 F.R.D. 43, 45-46 (D. Del. 1994) (prohibiting plaintiff's President from obtaining access to confidential business and

---

[1] NMT's contention that AGA has not demonstrated "good cause" for protecting its HIGHLY CONFIDENTIAL information from NMT's CFO is also erroneous. The parties agree that the information at issue is deserving of a higher level of protection than the lower-tiered CONFIDENTIAL information (which may be shown to one in-house person on each side in addition to in-house counsel). AGA merely seeks to protect its HIGHLY CONFIDENTIAL information from potential misuse by one of NMT's key decisionmakers.

financial information in long-standing patent litigation).  A CFO's job, by its very nature, involves using the precise confidential information that the parties have already agreed deserves protection.  Thus, once NMT's CFO has AGA's highly confidential information, it would be very difficult for him to disregard it while performing his duties as CFO.

NMT fails in its attempt to distinguish *Phillips* from this case.  On the contrary, the circumstances of this case are virtually identical to those in *Phillips*.  The stipulated Protective Order in the prior litigation between AGA and NMT provides that ***only*** in-house counsel have access to highly confidential information.  Notwithstanding NMT's alleged personnel changes, NMT still has in-house counsel.  Notwithstanding this fact, as in *Phillips*, NMT is attempting to modify the prior agreement by seeking access for its CFO to highly confidential information.  NMT should not be permitted to do so.

For these reasons, NMT's CFO should not be granted access to AGA "Highly Confidential Attorneys Only" materials on the same basis as AGA's in-house counsel. Providing AGA's highly confidential business information to an NMT business executive would defeat the very purpose of the protective order, and greatly prejudice Defendant's legitimate business interests.

Also, NMT's suggestion that AGA seek supplemental protection on a case-by-case basis for specific highly confidential business and scientific information does nothing to resolve the issue at hand, and gives no guidance to the parties on a going-forward basis.  Because of the likely prejudice to AGA, AGA is certain to seek such supplemental protection on multiple occasions, which would lead to unnecessary delay in discovery and waste of judicial resources.

Moreover, *Avery Dennison* and *Volvo* do not, as NMT suggests, support granting NMT's CFO access to highly confidential materials. *Volvo* and *Avery Dennison* dealt with in-house **counsel** (not in-house "persons"). In both cases, the Courts cited as support for allowing access to in-house counsel the fact that "in-house attorneys . . . must serve as 'officers of the court' and must abide by the 'same Code of Professional Responsibility' and ethics." *Volvo*, 187 F.R.D. at 243; *Avery Dennison*, 2001 WL 1339402, at *2. NMT's CFO is not bound by any such obligations.

NMT's argument that its CFO "communicates with, instructs and supervises NMT's outside counsel" and, therefore, should have access to AGA's highly confidential information is unsound. This is a situation that is within NMT's control to change. NMT should not be permitted to put AGA's sensitive financial information at risk simply because it has selected its CFO, instead of its in-house counsel, as liaison with outside counsel.

For the reasons set forth above, AGA respectfully requests that the Court enter the protective order proposed by AGA, which permits access to the parties' highly confidential information to one in-house counsel from each party, in addition to outside counsel and experts.

Dated:  December 22, 2005

/s/ Amy C. Dachtler
Amy C. Dachtler (BBO# 660234)
Robert E. Hillman (BBO# 234820)
Charles H. Sanders (BBO# 646740)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110-2804
Telephone (617) 542-5070
Facsimile (617) 542-8906

Attorneys for NMT MEDICAL, INC.
and LLOYD A. MARKS

/s/ Ching-Lee Fukuda
Ching-Lee Fukuda
Denise L. Loring
John R. Lane
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Mark P. Szpak (BBO # 546261)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7606

James T. Nikolai
NIKOLAI & MERSEREAU, P.A.
900 Second Avenue South, Suite 820
Minneapolis, Minnesota 55402
(612) 339-7461

Attorneys for
AGA MEDICAL CORPORATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NMT MEDICAL, INC. and LLOYD A. MARKS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| AGA MEDICAL CORPORATION, | ) ) |
| Defendant. | ) ) ) |

Civil Action No. 04-CV-12565 NG

|  |  |
|---|---|
| AGA MEDICAL CORPORATION, | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NITINOL MEDICAL TECHNOLOGIES, INC. d/b/a NMT MEDICAL, INC. and LLOYD A. MARKS, | ) ) ) ) |
| Defendants. | ) ) |

Civil Action No. 05-CV-11804 NG

## STIPULATED PROTECTIVE ORDER

      The parties, Nitinol Medical, Inc. and Lloyd A. Marks, (collectively, "NMT"), and AGA Medical Corporation ("AGA"), stipulate, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, that the following Protective Order may be entered by the Court:

      1.    This Stipulated Protective Order ("Protective Order") shall govern any designated record of information produced in this action, including, but not limited to all

designated deposition testimony, all designated testimony taken at a hearing or other proceeding, designated interrogatory answers, designated documents, things or other discovery materials, whether produced informally or in response to interrogatories, requests for admission, requests for production of documents or other formal methods of discovery.  This Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or District of Massachusetts Local Rule, and any supplementary disclosures thereto.

2.      This Protective Order shall apply to the categories of information listed in this section in the present action only, except that designated information, documents and things produced by the parties in *Nitinol Medical Technologies, Inc. and Lloyd A. Marks* v. *AGA Medical Corporation*, No. 98-12506-NG, shall be governed by this Protective Order.

3.      The terms of this Protective Order shall also apply to information, documents and things produced in connection with this litigation by third parties pursuant to subpoena or otherwise, if the producing third party states, in writing, the desire that the terms hereof apply to the information, documents and things produced by it.

4.      Except as otherwise provided by written stipulation of the parties or by further Order of the Court, any information, document or thing that a producing party determines, in good faith:

a.      contains or reveals any trade secret or other confidential research, development, technical, or commercial information may be designated by that party as "CONFIDENTIAL;" and

b.      contains or reveals highly sensitive financial information, information relating to a party's products under development, or information relating to business

planning or competitive analysis may be designated by that party as "HIGHLY CONFIDENTIAL ATTORNEYS ONLY."

5.      Documents or things containing confidential information shall be designated by stamping or affixing the word CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY to each page of the document or to a clearly visible portion of a physical object prior to its production.

6.      With respect to materials provided for inspection by a party's counsel, designation by stamping as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY need not be made until copies of the materials are requested after inspection and selection by counsel.  Making documents and things available for inspection shall not constitute a waiver of any claim of confidentiality, and materials provided for inspection by the party's counsel shall be treated as though designated as HIGHLY CONFIDENTIAL ATTORNEYS ONLY.

7.      The inadvertent or unintentional failure by a producing party to designate specific information, documents or things as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY shall not be deemed a waiver in whole or in part of a party's claim of confidentiality as to such information, document or thing.  Upon learning of the failure to designate, the producing party shall  promptly furnish written notice to the receiving party that the information, document or thing shall be CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY under this Protective Order and the receiving party shall cooperate in restoring the confidentiality of the disclosed information, without prejudice; provided, however, that no party shall be held in breach of this Protective Order if, prior to notification of such later designation, such material or information had been disclosed or used in a manner inconsistent with such later designation.

8.      Information, documents and things designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY shall include (a) all copies, extracts and complete or partial summaries prepared from such documents, information or things; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, things, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other writing filed with the Court and exhibits thereto which contain or reflect the content of any such documents, things, copies, extracts, or summaries; and (d) deposition testimony designated in accordance with paragraph 16 below.

9.      This Protective Order shall not apply to information that:

(a)  prior to disclosure, is public knowledge;

(b)  after disclosure, becomes public knowledge other than through an inadvertent or unintentional act or omission of the party to whom such disclosure is made;

(c)  is legitimately and independently acquired from a source not subject to this Protective Order; or

(d)  is legitimately and independently developed or invented by the party to whom disclosure is made.

10.     Each party and all persons bound by the terms of this Protective Order shall use any information, document or thing governed by this Protective Order only for the purpose of prosecution or defense of this action.  Particularly, and without limitation, neither party and no person bound by the terms of this Protective Order shall use any information or document provided to it in this action and governed by this Protective Order for any purpose in any other action.  No party or other person shall disclose or release to any person not qualified under this Protective Order any information, document or thing provided to it and governed by

this Protective Order for any purpose, or to any person qualified under this Protective Order for any purpose other than the prosecution or defense of this action.

11.     It is understood that counsel for a receiving party may provide advice and opinions to his or her client based on his or her evaluation of information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY by the producing party, provided that such rendering of advice and opinions shall not reveal the content of such information except by prior written agreement with the counsel for the producing party.  The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to insure that the information, documents and things governed by this Protective Order are (i) used only for the purposes specified herein, and (ii) disclosed only to authorized persons.  Individual attorneys or patent agents for the parties who have received information designated CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY by the other party will not prosecute any patent applications, including continuation, divisional, reissue, and reexamination applications, related to aperture occlusion devices for three years following the conclusion of this litigation.  (Other patent attorneys and patent agents employed by the same law firm may prosecute such patent applications as long as such other patent attorneys and patent agents do not review information designated CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY by the other party.)

12.     Information, documents and things designated as CONFIDENTIAL shall only be disclosed to, and inspected by:

(a)  attorneys and staff of the trial counsel of record in this action, and in-house counsel;

(b)  the Court, Court personnel and Court reporters as provided in paragraph 17;

(c)  outside experts or consultants and their staff, retained by the parties or their attorneys to furnish expert, consulting, or technical services or to give expert testimony for purposes of this litigation, pursuant to paragraph 14 below;

(d)  no more than one designated non-technical in-house person for each of NMT and AGA, including their related entities, whose advice or input is needed to assist NMT or AGA in the preparation of its case, pursuant to paragraph 14 below; and

(e)  photocopy and litigation support services.

No information, documents or things designated as CONFIDENTIAL shall be disclosed to any person other than the foregoing persons except by written stipulation of the parties or by further Order of the Court.

13.    Information, documents and things designated as HIGHLY CONFIDENTIAL ATTORNEYS ONLY shall only be disclosed to, and inspected by:

(a)  attorneys and staff of the trial counsel of record in this action;

(b)  the Court, Court personnel and Court reporters as provided in paragraph 17;

(c)  outside experts or consultants and their staff, retained by the parties or their attorneys to furnish expert, consulting, or technical services or to give expert testimony for purposes of this litigation, pursuant to paragraph 14 below;

(d)  photocopy and litigation support services;

(e)  **AGA's proposal:**  and in-house counsel.

**NMT's proposal 1:**  [Delete subparagraph (e) altogether.]

**NMT's proposal 2:**  and no more than one designated non-technical in-house person (who may be in-house counsel) for each of NMT and AGA, including their related entities, whose advice or input is needed to assist NMT or AGA in the preparation of its case, pursuant to paragraph 14 below.

No information, documents or things designated as HIGHLY CONFIDENTIAL ATTORNEYS ONLY shall be disclosed to any person other than the foregoing persons except by written stipulation of the parties or by further Order of the Court.

14.     If receiving party desires to give, show, make available or communicate information, documents or things designated by a producing party as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY to any outside expert, outside consultant or in-house person pursuant to paragraphs 12-13 above, it must identify in writing to the producing party, the outside expert, outside consultant or in-house person to whom it intends to give or disclose such information, documents or things.  Such identification shall include, at least, the full name and professional address and/or affiliation of the proposed outside expert, outside consultant and in-house person.  For experts and consultants, such identification shall further include an up-to-date curriculum vitae identifying at least all his/her other employment, deposition and trial testimony, and consultancies in the field for the last four (4) years.

15.     Each outside expert, outside consultant, in-house counsel, or in-house person identified pursuant to paragraph 14 shall execute an Undertaking in the relevant form annexed to this Protective Order as Exhibits A, B and C, respectively, prior to the disclosure of any CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY information.  All Undertakings shall be transmitted by facsimile or email to counsel of record for the producing party prior to the proposed disclosure of CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY information.  If the producing party believes in good faith that disclosure of CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY information to such outside expert or consultant would be injurious or prejudicial, it may object for reasonable cause set forth in writing, within five (5) business days of receipt of the Undertaking, during which time no disclosure shall be made to that person.  If the objections cannot be resolved, the party

seeking disclosure may apply to the Court, with service the same day on counsel of record by facsimile or email, for an Order allowing the disclosure. In the event objections are made and not resolved informally, no disclosure of CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY information shall be made except by Order of the Court.

16.     Transcripts, or portions thereof, may be designated as subject to this Protective Order either (1) by making a statement on the record at the deposition, or (2) by serving a written notice to the counsel of record for the deposing party within fourteen (14) days of receiving the final deposition transcript. All deposition transcripts not previously designated shall be deemed to be and shall be treated as HIGHLY CONFIDENTIAL ATTORNEYS ONLY for a period of fourteen (14) days after receipt of the final transcript, and transcripts shall not be disclosed by a receiving party to persons other than the designated persons under paragraphs 12-14 herein. Whenever matter designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY is to be discussed in a deposition, the party claiming such confidentiality may have excluded from the deposition any person who is not entitled under this Protective Order to receive information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY.

17.     Any information, documents or things designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY, if filed with the Court, shall be filed and kept by the Court under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes any information, document or thing subject to this Protective Order shall designate the material CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY, and file such paper in a sealed envelope indicating the caption of the case, the party filing the materials, and the legend:

**CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER IN
CIVIL ACTION NO. _____
NOT TO BE OPENED EXCEPT BY ORDER OF THE COURT**

In the event this provision conflicts with court procedure for filing documents under seal, court procedure shall control.  At the conclusion of this case, any materials filed with the Court under seal shall be kept under seal or disposed of as provided for in paragraph 24 below.

18.     A party producing documents or things may mask ("redact") material deemed exempt from discovery because of the attorney-client privilege or work product immunity afforded by Fed. R. Civ. P. 26(b), and may thus produce documents or things for inspection either in a masked or unmasked form.  However, any document or thing from which material is masked must identify in the masked area that masking or redaction has occurred and the basis for the masking or redaction.  The reason for any such redaction must also be identified on a separate withheld document log specifying the production number of the masked document or thing that was produced.

19.     A receiving party may disclose on the record at a deposition a document designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY to a witness not employed by a party on the record at a deposition, if the document on its face indicates that the witness was an author, addressee, or copy recipient of the document or if the witness was an employee of the producing party on or after the date of the document.

20.     Nothing herein shall affect the right of the producing party to disclose to its officers, directors, employees, consultants or experts, or to any other person, information or document designated by it as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY.

21.     No party shall be obligated to challenge the propriety of any confidentiality designation and failure to do so shall not preclude a subsequent challenge to the propriety of such designation.  Nothing in this Protective Order constitutes an admission by a receiving party that any information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY is a trade secret or otherwise confidential and proprietary to a party, and a receiving party may challenge the designation by a producing party of any document, information or thing as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY.  The party seeking such declassification or removal shall give counsel for the producing party written notice thereof by hand, email or facsimile, specifying the document, information or other thing as to which such removal is sought and the reasons for the request.  If, after conferring, the parties cannot reach agreement concerning the matter within ten (10) business days after the delivery of the notice, then the party requesting the declassification or removal of particular items designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY may file and serve a motion for a further Order of this Court directing that the CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY designation be removed.  A producing party may at any time change the designation of information it has produced upon notice to the receiving party, but the receiving party shall not be liable for any disclosure before the change in classification that was consistent with the former classification of the information.  The inadvertent designation of materials as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY, or the failure to designate materials as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY, may not be used for any evidentiary purpose whatsoever.

22.     Inadvertent or unintentional production of documents subject to work product immunity or the attorney-client privilege shall not constitute a waiver of the immunity or

privilege in whole or in part, provided that the producing party notify the receiving party in writing of such inadvertent or unintentional production promptly after the producing party learns of such inadvertent or unintentional production.  Upon receiving such notification, the receiving party shall return to the producing party such inadvertently or unintentionally produced document and all copies thereof.  No use shall be made of such documents during deposition or at trial; nor shall they be shown to anyone.  Return of the document by the receiving party shall not constitute an admission or concession or permit any inference that the returned document is in fact properly subject to a claim of attorney-client privilege or work product immunity; nor shall it foreclose the receiving party from moving the Court for an Order that such document is producible for reasons other than waiver caused by inadvertent or unintentional production.

23.    No part of the restrictions imposed by this Protective Order may be waived or terminated, except by an Order of the Court for good cause shown.  The restrictions provided for herein shall survive the final termination of this lawsuit.

24.    Within 60 days after the final termination of this action, unless otherwise agreed to in writing by an attorney of record for the producing party, each party shall return or destroy all material designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS ONLY, including all copies, extracts and summaries thereof, except that any documents or copies which contain or constitute or reflect attorney's work product or attorney-client privileged communications may be retained by counsel for the receiving party.  Outside counsel may keep one set of pleadings, correspondence, transcripts, and exhibits in an archive, subject to the continuing obligations under this Order.  In the event that documents are destroyed instead of returned, counsel for the receiving party shall certify in writing its compliance with this paragraph 24.

25.    This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (1) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (2) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (3) applying for a further Order modifying this Protective Order in any respect.

26.    This Protective Order is not intended to address fully discovery objections to produce, answer, or respond to on the grounds of attorney-client privilege or work product immunity.

Dated: December 22, 2005

NMT Medical, Inc. and Lloyd A. Marks
By their attorneys,


/s/ Amy C. Dachtler_____
Amy C. Dachtler (BBO #660234)
Robert Hillman (BBO #234820)
Charles H. Sanders (BBO #646740)
FISH & RICHARDSON, P.C.
225 Franklin Street
Boston, MA 02110
(617) 542-5070

AGA Medical Corporation
By its attorneys,


/s/ Ching-Lee Fukuda_____
Denise L. Loring
Ching-Lee Fukuda
Padmaja Chinta
John R. Lane
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000


Mark P. Szpak (BBO # 546261)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7606


James T. Nikolai
NIKOLAI & MERSEREAU, P.A.
900 Second Avenue South, Suite 820
Minneapolis, Minnesota 55402
(612) 339-7461


IT IS SO ORDERED.

Dated: _____

_____
United States District Judge

13

## EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NMT MEDICAL, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 04-12565 NG |
| | ) |
| v. | ) |
| | ) |
| AGA MEDICAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

| | |
|---|---|
| AGA MEDICAL CORPORATION, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 05-11804 NG |
| | ) |
| v. | ) |
| | ) |
| NITINOL MEDICAL TECHNOLOGIES, | ) |
| INC. d/b/a NMT MEDICAL, INC. and | ) |
| LLOYD A. MARKS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## UNDERTAKING TO ABIDE BY THE PROTECTIVE ORDER

STATE OF                         )

                                 )    ss

COUNTY OF                     )

        I, _____, having been retained as expert/consultant by

_____ in connection with the above-captioned lawsuit, hereby acknowledge that I am

about to receive "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL ATTORNEYS

ONLY" information subject to the Protective Order entered in this action on _____

("Protective Order").  Having been duly sworn, I state that:

1.      My address is _____.

2.      I have received a copy of the Protective Order in this action signed by
United States District Judge on _____.

3.      I have carefully read and understand the provisions of the Protective
Order.

4.      I will comply with all of the provisions of the Protective Order.

5.      I will hold in confidence, not disclose to anyone not qualified under the
Protective Order, and will use only for purposes of this action, any
CONFIDENTIAL and/or HIGHLY CONFIDENTIAL ATTORNEYS
ONLY materials which are disclosed to me.

6.      I will return or destroy all CONFIDENTIAL and/or HIGHLY
CONFIDENTIAL ATTORNEYS ONLY materials which may come into
my possession, and documents or things which I may prepare relating
thereto, to authorized counsel for the party by whom I am employed or
retained when requested to do so by that counsel.

7.      I hereby submit to the jurisdiction of this Court for the purpose of
enforcement of the Protective Order against me in this action.


_____


Subscribed and sworn to before me on _____


_____
Notary Public


2

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ | ) |
| NMT MEDICAL, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 04-12565 NG |
| | ) |
| v. | ) |
| | ) |
| AGA MEDICAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| _____ ) | ) |
| AGA MEDICAL CORPORATION, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 05-11804 NG |
| | ) |
| v. | ) |
| | ) |
| NITINOL MEDICAL TECHNOLOGIES, | ) |
| INC. d/b/a NMT MEDICAL, INC. and | ) |
| LLOYD A. MARKS, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | |

**UNDERTAKING TO ABIDE BY THE PROTECTIVE ORDER**

| | |
|---|---|
| UNDERTAKING OF | ) |
| STATE OF | ) ss. |
| COUNTY OF | ) |

I, _____, having been designated under the Protective

Order entered into in this action on ___ ("Protective Order") as in-house counsel for

_____ in connection with the above-captioned lawsuit, hereby acknowledge that I am

about to receive "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL ATTORNEYS

ONLY" information subject to the Protective Order.  Having been duly sworn, I state

that:

8.    My address is _____.

9.    I have received a copy of the Protective Order in this action signed by United States District Judge on **_____**.

10.   I have carefully read and understand the provisions of the Protective Order.

11.   I will comply with all of the provisions of the Protective Order.

12.   I will hold in confidence, not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action, any CONFIDENTIAL and/or "HIGHLY CONFIDENTIAL ATTORNEYS ONLY" materials which are disclosed to me.

13.   I will not prosecute any patent applications, including continuation, divisional, reissue, and reexamination applications, related to aperture occlusion devices for up to three years following the conclusion of this litigation.

14.   I will return or destroy all CONFIDENTIAL and/or "HIGHLY CONFIDENTIAL ATTORNEYS ONLY" materials which may come into my possession, and documents or things which I may prepare relating thereto, to authorized counsel for the party by whom I am employed or retained when requested to do so by that counsel.

15.   I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order against me in this action.

I hereby declare under the penalty of perjury that the foregoing is true and correct.


_____
Signature

Subscribed and sworn to before me on _____


_____
Notary Public

## EXHIBIT C

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ ) | |
| NMT MEDICAL, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 04-12565 NG |
| ) | |
| v. ) | |
| ) | |
| AGA MEDICAL CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| _____ ) | |
| ) | |
| AGA MEDICAL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 05-11804 NG |
| ) | |
| v. ) | |
| ) | |
| NITINOL MEDICAL TECHNOLOGIES, ) | |
| INC. d/b/a NMT MEDICAL, INC. and ) | |
| LLOYD A. MARKS, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ | |

### UNDERTAKING TO ABIDE BY THE PROTECTIVE ORDER

STATE OF                              )
                                      )        ss.
COUNTY OF                        )


I, _____, having been designated under the Protective

Order entered into in this action on ___ ("Protective Order") as in-house person for

_____ in connection with the above-captioned lawsuit, hereby acknowledge that I am

about to receive "CONFIDENTIAL" information subject to the Protective Order.  Having

been duly sworn, I state that:

    1.      My address is _____.

    2.      My present employer is _____ and the address of my present employment is _____.

    3.      My present job title is _____.  My present occupation or job description is _____.

    4.      I have received a copy of the Protective Order in this action signed by United States District Judge on _____.

    5.      I have carefully read and understand the provisions of the Protective Order.

    6.      I will comply with all of the provisions of the Protective Order.

    7.      I will hold in confidence, not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action, any CONFIDENTIAL materials which are disclosed to me.

    8.      I will return or destroy all CONFIDENTIAL materials which may come into my possession, and documents or things which I may prepare relating thereto, to authorized counsel for the party by whom I am employed or retained when requested to do so by that counsel.

    9.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order against me in this action.

_____

Subscribed and sworn to before me on _____

_____
Notary Public

2